IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DARRYL GEORGE AND | § | |
| DARRESHA GEORGE | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | C.A. No. 3:24-cv-00012 |
| | § | |
| GREG ABBOTT, KEN PAXTON, | § | |
| BARBERS HILL INDEPENDENT | § | |
| SCHOOL DISTRICT, GREG POOLE, | § | |
| LANCE MURPHY AND RYAN | § | |
| RODRIGUEZ | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFFS' NOTICE TO THE COURT

PLAINTIFFS file this Notice to the Court, as follows:

1.      There is a case that is similar in stature and which has BHISD (Barber's Hill
ISD) as a Defendant within it for almost identical behaviors. This case has
complaints that are almost identical to the facts in the case at bar. This case involves
to other students, Everett DeAndre Arnold and K. Bradford who also sued BHISD
for its dress and grooming code's length requirement. That particular action
involves a common question of law or fact (to this action).

2.      That case is in the Southern District of Texas (Houston Division) and is
before the Honorable Judge Hanks.

3.       The United States Department of Justice filed a statement of interest, an
amicus filing within that case. Statements of interest are designed to explain to the court
the interests of the United States in litigation between private parties.

4.      On 07/23/21, the Department of Justice issued a statement of interest as it relates to BHISD's grooming code. *See* Statement of Interest, attached as Exhibit A.

5.      As such, the Plaintiffs file this Notice to the Court regarding the United States Department of Justice and its Statement of Interest.

Respectfully submitted,

THE BOOKER LAW FIRM

*/S/Allie R. Booker*
*ALLIE* R. BOOKER
Federal Bar No. 1089873
1200 Rothwell
Houston, Texas 77002
(713) 292-2225 office
(713) 583-3999 facsimile
booker@bookerlawfirm.com
ATTORNEY FOR PLAINTIFFS,
DARRY GEORGE AND DARRESHA GEORGE

## CERTIFICATE OF CONFERENCE

I hereby certify that, I conferred with counsel regarding this above Notice. BHISD and the BHISD employee defendants are opposed. Abbott and Paxton are unopposed.

*/s/ Allie R. Booker*
**ALLIE R. BOOKER**
Attorney for Plaintiffs

## NOTICE OF ELECTRONIC FILING

I, **Allie Booker**, do hereby certify that I have electronically submitted for filing a true copy of the foregoing in accordance with the Electronic Case Files System of the United States District Court for the Southern District of Texas, Galveston Division, on April 2, 2024.

*/s/ Allie R. Booker*
**ALLIE R. BOOKER**
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I, **Allie R. Booker**, certify that a true and correct copy of the forgoing was served on all counsel and parties of record by electronic service through the Electronic Case Files System, on April 2, 2024.

<u>*/s/* **Allie R. Booker**</u>
**ALLIE R. BOOKER**
Attorney for Plaintiffs

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| EVERETT DE'ANDRE ARNOLD, K.B., a minor by and through his mother and next friend, CINDY BRADFORD, and SANDY ARNOLD, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | C.A. NO.: 4:20-CV-01802 |
| | ) | |
| BARBERS HILL INDEPENDENT SCHOOL DISTRICT, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<br>

## UNITED STATES' STATEMENT OF INTEREST

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

INTEREST OF THE UNITED STATES .......................................................... 3

FACTUAL BACKGROUND ............................................................................. 4

I.  The District's Hair Length Policy ............................................................. 4

II.  The Hair Length Policy's Impact on Plaintiffs .................................... 5

ARGUMENT ....................................................................................................... 6

I.  Plaintiffs Adequately Allege a Constitutional Claim for
Sex Discrimination ....................................................................................... 7

    A.  Plaintiffs Allege that the Hair Length Policy Is a Sex-Based
    Classification that Is Not Substantially Related to an Important
    Governmental Objective ....................................................................... 8

    B.  *Karr v. Schmidt* Does Not Foreclose Plaintiffs' Constitutional
    Claim for Sex Discrimination ............................................................. 10

II.  Plaintiffs Adequately Allege Title IX Claims for Sex Discrimination
and Retaliation. .............................................................................................. 13

    A.  Title IX's Broad Prohibition Against Sex Discrimination
    Applies to the Hair Length Policy and Plaintiffs Adequately
    Allege Unlawful Sex Discrimination ................................................ 13

    B.  Plaintiffs Have Standing to Assert a Title IX Retaliation Claim ...... 15

        1.  Complainants Like Mrs. Arnold Have Standing to Bring
        Title IX Retaliation Claims and the District's Reliance
        on Non-Retaliation Cases to Argue Otherwise Is Meritless ...... 16

        2.  Accepting the District's Restrictive View of Standing
        Would Frustrate Title IX's Purpose and Enforcement
        Scheme .............................................................................................. 19

CONCLUSION ................................................................................................... 20

## INTRODUCTION

Plaintiffs Everett De'Andre Arnold ("De'Andre") and minor K.B.—former and current students of Defendant Barbers Hill Independent School District ("the District")—are Black boys who wear their natural hair in locs as an outward expression of their Black identity and culture.[1]  When the students' locs grew long, the District advised them that they would need to cut their locs to comply with the District's hair length policy.  Seeking to maintain their culturally significant hair styles, De'Andre and K.B. refused.  Had De'Andre and K.B. been female, their hair would not have run afoul of the District's hair length policy.  But because they are male, the District disciplined them for noncompliance.

De'Andre, his mother Sandy Arnold, and K.B.'s mother Cindy Bradford (collectively, "Plaintiffs") subsequently filed suit against the District, alleging that the District's hair length restrictions, which apply solely to male students, constitute sex discrimination under the Fourteenth Amendment Equal Protection Clause, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*., and Texas state law.  In addition, Plaintiffs assert race discrimination claims under the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, and Texas state law; First Amendment free speech and freedom of expression claims; and Fourteenth Amendment Due Process claims.  Lastly, Plaintiffs allege that the District

---

[1] "The term 'locs' is used in place of the more common term 'dread locks.'  The term 'dread' in the word 'dread locks' is derived from the word 'dreadful' used by English slave traders to refer to Africans' hair, which researchers believe 'locked' naturally on its own during the Middle Passage."  2nd A. Compl. ¶ 1 n.1 (citing April Williams, *My Hair is Professional Too!: A Case Study and Overview of Laws Pertaining to Workplace Grooming Standards and Hairstyles Akin to African Culture*, 12 S. J. POL'Y & JUST. 138, 165–66 (2018)).

1

retaliated against Mrs. Arnold after she complained about the District's disparate treatment of students based on sex and race, in violation of Title IX and the First Amendment.

On June 21, 2021, the District moved to dismiss Plaintiffs' federal and state sex discrimination claims, First Amendment claims, and Due Process claims.[2] Def.'s Mot. for Partial Dismissal ("Mot."), ECF No. 144. The United States respectfully submits this Statement of Interest to assist the Court in evaluating the sufficiency of Plaintiffs' federal sex discrimination claims.[3] In moving to dismiss those claims, the District argues that its hair length policy is per se valid and thus insulated from judicial review. The District also contends that as a parent, Mrs. Arnold lacks standing to assert a Title IX retaliation claim. The District is mistaken. Contrary to the District's assertion, there is no binding Fifth Circuit precedent that bars judicial review of sex-based challenges to school hair length regulations. Nor is Mrs. Arnold precluded from asserting a Title IX retaliation claim. Rather, the Supreme Court has held that plaintiffs like Mrs. Arnold, who allege retaliation for complaining about sex discrimination, have Title IX standing. Applying the proper Equal Protection Clause and Title IX standards, the allegations set forth in Plaintiffs' Second Amended Complaint state cognizable sex discrimination claims that survive the District's Motion for Partial Dismissal.

---

[2] The District also seeks to dismiss Plaintiffs' corresponding requests for declaratory relief and their request for punitive damages under all theories of liability. Mot. 1. The District does not seek to dismiss Plaintiffs' federal or state race discrimination claims. *Id.*

[3] The United States does not opine on the sufficiency of Plaintiffs' First Amendment, Due Process, or state law claims.

## INTEREST OF THE UNITED STATES

The United States has authority to file this Statement of Interest under 28 U.S.C. § 517, which permits the Attorney General to attend to the interests of the United States in any case pending in a federal court. The United States has a significant interest in ensuring that all students can participate in an educational environment free of unlawful discrimination and in the proper application of the Equal Protection Clause, Title IX, and Title VI.[4] The United States Department of Justice ("DOJ") and the United States Department of Education ("ED") enforce Title IX to protect students from sex discrimination in federally funded education programs and activities. DOJ is further charged with coordinating the implementation and enforcement of Title IX and other statutes that prohibit discrimination by recipients of federal funds, such as Title VI, across all executive agencies. *See* Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980); 28 C.F.R. § 0.51. Where it serves as a federal funding agency, or upon referral from ED or other funding agencies, DOJ may bring suit to enforce Title VI and Title IX. 42 U.S.C. § 2000d-1; *see* 20 U.S.C. § 1682. DOJ also has authority under Title IV of the Civil Rights Act of 1964 to investigate and resolve complaints that a school board is depriving students of equal protection based on sex, race, and other bases.[5] 42 U.S.C. §§ 2000c and 2000c-6.

---

[4] Because the District does not seek to dismiss Plaintiffs' race discrimination claims, the United States does not address the proper application of Title VI to those claims.

[5] Under this authority, DOJ has an ongoing investigation related to a complaint alleging that the District refused to allow a student to attend a District school unless he cut his hair to conform with the hair length policy. To date, the investigation has focused on alleged religious discrimination. DOJ has not endorsed the legal validity of the District's hair length policy as it relates to allegations of sex- and race-based discrimination.

Finally, DOJ enforces Title IX of the Civil Rights Act of 1964, which authorizes the Attorney General to intervene in cases of general public importance involving alleged denials of the "equal protection of the laws under the fourteenth amendment to the Constitution."  42 U.S.C. § 2000h-2.

## FACTUAL BACKGROUND

The United States recites the following facts based on the well-pleaded allegations in Plaintiffs' Second Amended Complaint, which the Court must accept as true for purposes of the District's Motion for Partial Dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted).

### I.  The District's Hair Length Policy

The District maintains and regularly revises a dress and grooming code that outlines the standards to which students are held.[6]  2nd A. Compl. ¶¶ 42–50.  The dress and grooming code includes a hair length policy, which provides in relevant part:

> Male students' hair will not extend, at any time, below the eyebrows, or below the ear lobes.  Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down.

*Id.* ¶ 50.  District administrators discipline students who violate the dress and grooming code as those administrators deem appropriate (e.g., in-school suspension) until the

---

[6] This Statement of Interest does not detail the history of the District's revisions to its hair length policy, *see* 2nd A. Compl. ¶¶ 41–55, which bears primarily on Plaintiffs' race discrimination claims.  Instead, it focuses on the current hair length policy that is the subject of Plaintiffs' sex discrimination claims.

violation is corrected. *Id.* ¶¶ 56, 63. For hair violations, students have until the following school day to correct the violation before the District imposes discipline. *Id.* ¶ 48 n.24.

## II. The Hair Length Policy's Impact on Plaintiffs

De'Andre and K.B. are Black boys who started attending District schools in 2006 and 2010, respectively. *Id.* ¶¶ 66, 140. Until January 2020, both students were enrolled in the District. *Id.* ¶¶ 136, 184. At all relevant times, De'Andre and K.B. have worn their natural hair in locs as an outward expression of their Black identity and culture. *Id.* ¶¶ 4, 9–10, 25–26, 69, 141. Neither student has cut his hair since the time the locs began to form. *Id.* ¶¶ 25–26. As the students' locs grew, the District told them that they would need to cut their locs to comply with the District's hair length policy. *Id.* ¶ 11. When De'Andre and K.B. refused, the District disciplined them for violating the dress and grooming code by assigning both students to in-school suspension. *Id.* ¶¶ 101, 178–83.

Sandy Arnold, De'Andre's mother and K.B.'s aunt, publicly asserted that the hair length policy discriminated based on sex and race at school board meetings in November 2019, December 2019, and January 2020. *Id.* ¶¶ 192–93, 205–09, 225–26. After Mrs. Arnold made public comments in November 2019, the Chief of the District Police Department shadowed her each time she visited the District's Central Office or Barbers Hill High School, following her on approximately six or seven occasions. *Id.* ¶¶ 228, 230. At the end of the December 2019 meeting, Superintendent Greg Poole also reprimanded Mrs. Arnold for her comments, raising his voice and pointing at her in a threatening manner. *Id.* ¶ 212–15.

Because of the District's actions, De'Andre and K.B. transferred to Goose Creek Consolidated Independent School District ("Goose Creek CISD"), where they no longer had access to educational resources and opportunities that were previously available to them at Barbers Hill High School. *See id.* ¶¶ 17–18, 25–26, 280. De'Andre graduated from Ross S. Sterling High School in Goose Creek CISD. *Id.* ¶ 137. K.B. returned to the District only after this Court granted Plaintiffs' Motion for Preliminary Injunction and enjoined the District from enforcing its hair length policy against K.B. *See id.* ¶ 187; *see Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511 (S.D. Tex. 2020).

## ARGUMENT

Plaintiffs' Second Amended Complaint states cognizable sex discrimination claims under the Equal Protection Clause and Title IX, and the District's arguments to the contrary lack merit. The District relies almost exclusively on a single case, *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972), to assert that Fifth Circuit precedent forecloses Plaintiffs' claims. In particular, the District contends that *Karr* establishes a per se rule barring judicial review of *all* hair length regulations. But *Karr* did not involve a sex discrimination claim or any other claim requiring heightened scrutiny. Rather, its per se rule was premised on claims that received only rational basis review. Therefore, any per se rule that *Karr* established is inapplicable to Plaintiffs' sex-based challenge to the District's hair length policy.

The District's challenge to Plaintiffs' Title IX retaliation claim for lack of standing is also meritless. Mrs. Arnold's status as a parent does not preclude her from asserting such a claim. The District's attempt to argue otherwise is inconsistent with both applicable law and Title IX's purpose and enforcement scheme.

6

## I.  Plaintiffs Adequately Allege a Constitutional Claim for Sex Discrimination.

The Fourteenth Amendment Equal Protection Clause protects individuals "against intentional and arbitrary discrimination," whether by a policy's express terms or by an official's improper implementation of the policy.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923)).  Depending on the nature of the government classification at issue, courts reviewing Equal Protection Clause claims apply one of three levels of scrutiny: rational basis review, intermediate scrutiny, or strict scrutiny.  *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citations omitted).

The Supreme Court has long held that sex-based classifications challenged under the Equal Protection Clause warrant intermediate scrutiny.  *See, e.g., United States v. Virginia*, 518 U.S. 515, 533 (1996) ("*VMI*") (citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982)).  This "heightened scrutiny . . . attends 'all gender-based classifications.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quoting *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 136 (1994)); *see VMI,* 518 U.S. at 555.  Under intermediate scrutiny, a defendant bears the demanding burden of showing that the challenged sex- or gender-based classification "serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'"  *VMI*, 518 U.S. at 533 (quoting *Miss. Univ. for Women*, 458 U.S. at 724).  There is a "strong presumption that gender classifications are invalid."  *See VMI*, 518 U.S. at 532–33 (quoting *J.E.B.*, 511 U.S. at 152 (Kennedy, J., concurring)).

7

## A. Plaintiffs Allege that the Hair Length Policy Is a Sex-Based Classification that Is Not Substantially Related to an Important Governmental Objective.

The Second Amended Complaint sufficiently states a sex-based Equal Protection Clause claim requiring heightened scrutiny. First, Plaintiffs allege that the District's hair length policy imposes different obligations on students according to their sex. In particular, the challenged hair length policy applies expressly to male students only. 2nd A. Compl. ¶ 50 (stating that policy requires that "[m]ale students' hair will not extend . . . below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down"). Because the District's hair length policy applies solely to one sex, the District treats male students differently from their female counterparts in enforcing it. *See, e.g., Latta v. Otter*, 771 F.3d 456, 480 (9th Cir. 2014) ("A [policy] that facially dictates that a man may do X while a woman may not, or vice versa, constitutes, without more, a gender classification.") (Berzon, J., Concurring); *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 579 (7th Cir. 2014) ("[T]he hair-length policy, being applicable only to boys teams, draws an explicit gender line. The intent to treat boys differently from girls is therefore evident from the one-sided nature of the policy."). The Second Amended Complaint thus adequately alleges that the District's hair length policy constitutes a sex-based classification subject to intermediate scrutiny.

Second, Plaintiffs allege that the District's hair length policy is unjustified and cannot survive intermediate scrutiny. Specifically, the Second Amended Complaint alleges that the District's hair length policy is "wholly arbitrary" and "does not further an important government interest because [the District] has no legitimate, important, and

8

substantial reason to permit female students to wear their hair long when male students are not so permitted." 2nd A. Compl. ¶¶ 337–38 (alleging that District administrators conceded that granting male student an exemption to hair length policy would not adversely affect District's educational goals, that male student could wear uncut locs without interfering with District's goals, and that length of male student's hair is unrelated to student's hygiene and ability to display positive behavior). It also alleges that the District "failed to consider whether the hair policy's facial sex discrimination is substantially related to any of the District's stated objectives."[7] *Id.* ¶ 336. These allegations sufficiently state a claim that the hair length policy is not substantially related to an important governmental objective. *See Crews v. Cloncs*, 432 F.2d 1259, 1265–66 (7th Cir. 1970) (holding that school district failed to satisfy "substantial burden of justification" because it offered no reasons why health and safety objectives underlying male students' hair regulation were not equally applicable to female students); *cf. A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 271–72 (5th Cir. 2010) (analyzing free exercise challenge under state statute and finding that school district's decision to permit girls to wear hair visibly long weakens any connection between district's interests and hair length policy preventing boys from doing the same); *Warsoldier v. Woodford,* 418 F.3d 989, 1000 (9th Cir. 2005) (analyzing free exercise challenge under federal statute and finding that

---

[7] In response to Plaintiffs' Motion for Preliminary Injunction, the District offered justifications for its hair length policy that it asserted were substantially related to important government objectives. *See* Defs.' Resp. to Pl. K.B.'s Mot. for a Prelim. Inj. 26, ECF No. 57. This Court found that the District's evidence did not satisfy intermediate scrutiny and held that the "lack of a persuasive justification for the hair-length policy establishes a substantial likelihood that K.B. will prevail on his cause of action . . . for sex discrimination in violation of the Equal Protection Clause." *Arnold*, 479 F. Supp. 3d at 522–24 (granting preliminary injunction).

9

where a prison's interests in health and security applied equally to male and female inmates, those interests did not justify a policy requiring only males to have short hair).

### B. *Karr v. Schmidt* Does Not Foreclose Plaintiffs' Constitutional Claim for Sex Discrimination.

The District argues that the Fifth Circuit's decision in *Karr v. Schmidt* forecloses Plaintiffs' Equal Protection Clause claim because it establishes a per se rule that hair length regulations are constitutionally valid.[8]  Mot. 5–7.  The District is incorrect.  *Karr* did not involve a constitutional sex discrimination claim or any other claim requiring heightened scrutiny, and any per se rule it announced is inapplicable here.

In *Karr*, the Fifth Circuit reviewed a student's generally "asserted right to be free of school regulations governing the length of his hair" under the Equal Protection Clause.  460 F.2d 609, 611 (5th Cir. 1972).  Because the student did not challenge the hair length regulation based on any suspect or quasi-suspect classification, the court applied rational basis review.  *See id.* at 616.  It then concluded that the regulation satisfied the minimum test of rationality and that the district court erred in holding that the regulation "was an arbitrary classification which violated the Equal Protection clause."  *Id*. at 616–17.

The Fifth Circuit observed more broadly that challenges to school hair length regulations had burdened federal courts and led to inconsistent outcomes depending on "the individual views of the district judges . . . as to the 'reasonableness' of grooming regulations."  *Karr,* 460 F.2d at 617.  As in *Karr,* these challenges were not based on

---

[8] The District also cites two state court decisions to argue that *Karr* bars judicial review of hair length policies.  Mot. 6–7.  These cases are not binding, nor do they involve Fourteenth Amendment Equal Protection Clause claims.

10

suspect or quasi-suspect classifications.  Instead, they involved largely uniform claims and justifications that triggered the lowest level of scrutiny.  *See id.*  For those reasons, the court announced a per se rule that hair regulations are constitutionally valid and directed courts to dismiss general challenges to such regulations.[9]  *Id.* at 617–18.

In formulating this rule, the court treated challenges warranting heightened scrutiny as distinct from the general challenges it deemed burdensome and subject to inconsistent outcomes.  Indeed, the court explicitly distinguished the challenge before it from a sex-based challenge in the Seventh Circuit where that court held that hair regulations specific to male students "are violative of the Equal Protection clause because they apply solely to male students and not to female students."[10]  *Karr,* 460 F.2d at 616.  Given this distinction, *Karr*'s dictum directing courts to dismiss routine challenges to hair regulations does not apply to Plaintiffs' allegations of sex discrimination.  Courts in this circuit, including this Court, have reached the same conclusion and declined to apply *Karr*'s holding to sex-based challenges to dress and grooming codes.  *See Arnold v. Barbers Hill Indep. Sch. Dist.,* 479 F. Supp. 3d 511, 520–21 (S.D. Tex. 2020) ("*Karr* does not address sex discrimination . . . [and] did not discuss the questions presented by K.B.—let alone resolve them adversely to K.B.—because the *Karr* Court was not presented with those questions."); *Sturgis v. Copiah*

---

[9] Other language in the court's opinion indicates that the court intended to limit application of the per se rule to facial challenges that trigger rational basis review.  *See Karr,* 460 F.2d at 617 n.26 ("[U]nder the rule we announce today, federal courts would still be permitted to entertain an action alleging discriminatory enforcement of a grooming code."); *see also id.* ("[G]rooming regulations are subject to the requirement that they not be wholly arbitrary.  Thus, this rule of per se validity would not apply to a regulation which had an arbitrary effect[.]").

[10] Notably, the *Karr* court did not question the holding or rationale in that Seventh Circuit case, *Crews v. Cloncs*, 432 F.2d 1259 (7th Cir. 1970).  *See* 460 F.2d at 616 & n.19.

11

*Cnty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *2–3 (S.D. Miss. Sept. 15, 2011) (finding *Karr's* per se rule inapplicable in case challenging sex-based dress code because *Karr* did not address sex discrimination).

That the Fifth Circuit has continued to review and invalidate hair length regulations after *Karr* further demonstrates that *Karr* does not stand for the proposition that hair length regulations are per se constitutional and thus unreviewable. *See, e.g., Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F. Supp. 1319, 1328–33 (E.D. Tex. 1993) (finding plaintiffs likely to succeed on merits of First and Fourteenth Amendment challenges to hair length policy), *remanded*, 20 F.3d 469 (5th Cir. 1994) (per curiam) (finding increased likelihood of success after federal Religious Freedom Restoration Act enacted); *A.A. ex rel. Betenbaugh*, 611 F.3d at 253, 267–68 (holding that hair length exemption requiring Native American student to wear his long hair in a bun or tucked into his shirt violated the Texas Religious Freedom Restoration Act).[11]  In *Alabama & Coushatta Tribes v. Trustees of Big Sandy Independent School District*, the court recognized that *Karr's* per se rule is narrow and inapplicable where a plaintiff alleges a claim triggering heightened scrutiny.  817 F. Supp. at 1328 ("The Fifth Circuit announced a *per se* rule in *Karr*—school dress codes are valid *as long as they do not affect fundamental*

---

[11] Because the Fifth Circuit "do[es] not decide constitutional claims when a case can be footed on alternative grounds," the case was decided under the Texas Religious Freedom Restoration Act ("TRFRA"). *A.A. ex rel. Betenbaugh*, 611 F.3d at 258.  TRFRA is the state statutory equivalent of the Free Exercise Clause, and it was enacted to reinstate the strict scrutiny applied to First Amendment free exercise claims prior to *Employment Division v. Smith*, 494 U.S. 872 (1990).  Thus, *A.A. ex rel. Betenbaugh* supports the view that courts may review the constitutionality of hair length policies, even in the wake of *Karr*.

*freedoms*.").    Because Plaintiffs' constitutional sex discrimination claim triggers heightened scrutiny, *Karr* does not bar this Court from reviewing the claim.

## II. Plaintiffs Adequately Allege Title IX Claims for Sex Discrimination and Retaliation.

### A. Title IX's Broad Prohibition Against Sex Discrimination Applies to the Hair Length Policy and Plaintiffs Adequately Allege Unlawful Sex Discrimination.

In moving to dismiss Plaintiffs' Title IX claim, the District's lone argument is that *Karr's* per se rule also bars Title IX review.[12]  Mot. 9.   As discussed, *Karr* does not foreclose judicial review of constitutional challenges to hair regulations.   The same is true for federal statutory challenges.   *Karr* makes no reference to federal statutory claims, and the District fails to cite a single case where *Karr* barred review of such claims.   To the contrary, courts in the Fifth Circuit have reviewed sex-based claims under Title IX notwithstanding *Karr.  See Sturgis v. Copiah Cnty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *4–5 (S.D. Miss. Sept. 15, 2011) (denying motion to dismiss Title IX challenge to sex-based dress code).

Apart from invoking *Karr*, the District does not otherwise challenge the sufficiency of Plaintiffs' Title IX allegations.   And for good reason.   Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a); *see also* 34 C.F.R.

---

[12] In fact, the District argues that *Karr's* per se rule forecloses *all* federal statutory claims.  Mot. 9.  The District cites no case law in support of this interpretation of *Karr*.

§ 106.31(b)(4) and 7 C.F.R. § 15a.31(b)(4) (prohibiting federal funding recipient from "subject[ing] any person to separate or different rules of behavior, sanctions, or other treatment" based on sex); 34 C.F.R. § 106.31(b)(7) (prohibiting federal funding recipient from "[o]therwise limit[ing] any person in the enjoyment of any right, privilege, advantage, or opportunity" based on sex). The statute enumerates exceptions to this broad prohibition on sex discrimination, none of which include dress and grooming codes. *See* 20 U.S.C. § 1681(a). As the Supreme Court has explained, "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *See Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (citation and brackets omitted). Because Congress did not expressly exempt dress and grooming codes, Title IX applies to all aspects of a federal funding recipient's education programs and activities, including dress and grooming codes.[13]

Applying Title IX to dress and grooming codes is consistent with the Supreme Court's long-held view that Title IX should be construed broadly. *Jackson v. Birmingham*

---

[13] In 1982, the U.S. Department of Education ("ED") rescinded a specific prohibition on discriminatory codes of personal appearance in its Title IX regulations ("1982 ED Rescission"). 47 Fed. Reg. 32,526 (July 28, 1982). Although the District's Motion for Partial Dismissal does not cite the 1982 ED Rescission as a basis for dismissing Plaintiffs' Title IX claim, the District relied on that rescission in defending against Plaintiffs' Motion for Preliminary Injunction. *See* Defs.' Resp. to Pl. K.B.'s Mot. for a Prelim. Inj. 28–29, ECF No. 57. Because the 1982 ED Rescission has also arisen in other cases, the United States clarifies here that the rescission does not exempt dress and grooming codes from Title IX. In rescinding the regulatory provision addressing discriminatory codes of personal appearance, ED did not purport to construe Title's IX terms. Instead, the 1982 ED Rescission reflects ED's administrative enforcement priorities *at that time*—i.e., permitting ED "to concentrate its resources on cases involving more serious allegations of sex discrimination." *See* 47 Fed. Reg. 32,526; *see also* 46 Fed. Reg. 23,081 (Apr. 23, 1981) (explaining that 1982 ED Rescission would "free[]" ED "from devoting its resources to resolving complaints involving personal appearance codes"). Since 1982, ED has investigated Title IX complaints involving dress and grooming codes, and recent case law recognizes that enforcement of sex-differentiated dress and grooming codes can violate Title IX. *See, e.g., Hayden ex rel. A.H.*, 743 F.3d at 583; *Sturgis*, 2011 WL 4351355, at *4–5.

14

*Bd. of Educ.*, 544 U.S. 167, 175 (2005) (explaining that "Congress gave [Title IX] a broad reach"); *see id.* (construing Title IX to prohibit retaliation despite no express mention of retaliation in statutory text); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (construing Title IX to prohibit sexual harassment despite no express mention of sexual harassment in statutory text). Recognizing the statute's broad scope, other courts have applied Title IX to sex-based dress and grooming codes. *See Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569 (7th Cir. 2014) (holding hair length policy applicable only to boys playing interscholastic basketball constituted unlawful sex discrimination under the Equal Protection Clause and Title IX); *Sturgis*, 2011 WL 4351355, at *4–5 (denying motion to dismiss Title IX challenge to sex-based dress code). This Court should do the same.

Because Plaintiffs allege that the District enforced its sex-based hair length policy against De'Andre and K.B., denied the students the benefits of their school's education program, and excluded them from that program when similarly situated girls would not have been so excluded, Plaintiffs state a sex discrimination claim under Title IX.

### B. Plaintiffs Have Standing to Assert a Title IX Retaliation Claim.

The District urges this Court to dismiss Mrs. Arnold's Title IX retaliation claim because, "as a parent, Mrs. Arnold does not have standing." Mot. 16. The District argues that parents are categorically excluded from bringing Title IX retaliation claims on their own behalf and suggests that only employees or students may bring such claims. *See id.* The Court should reject this argument because it conflicts with applicable precedent and, if adopted, would frustrate Title IX's purpose and enforcement scheme.

### 1. Complainants Like Mrs. Arnold Have Standing to Bring Title IX Retaliation Claims and the District's Reliance on Non-Retaliation Cases to Argue Otherwise Is Meritless.

Retaliation against an individual for complaining about sex discrimination in a federally funded education program constitutes intentional sex discrimination actionable under Title IX, and complainants like Mrs. Arnold have standing to assert a Title IX retaliation claim. *See Jackson*, 544 U.S. at 173–74; *see also* 34 C.F.R. § 100.7(e) ("No recipient [of federal funds] . . . shall intimidate, threaten, coerce, or discriminate against *any individual* . . . because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title IX]." (emphasis added)). In *Jackson v. Birmingham Board of Education*, the Court explained that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" 544 U.S. at 178. The Court also held that individuals may be victims of discriminatory retaliation regardless of whether they were the subject of the original complaint. *Id.* at 179–80 (finding that coach could assert retaliation claim even though his original complaints concerned discrimination against girls' basketball team); *cf. Thompson v. N. Am. Stainless*, 562 U.S. 170, 172, 175–78 (2011) (holding that employee terminated after his fiancé filed sex discrimination complaint against mutual employer had standing to bring Title VII retaliation claim because terminated employee was adversely affected within the zone of interests protected by the statute).

Applying *Jackson*, Mrs. Arnold has standing to assert a Title IX retaliation claim. Plaintiffs allege that the District retaliated against Mrs. Arnold because she complained

16

that the hair length policy discriminated against Black and male students during three school board meetings.  2nd A. Compl. ¶¶ 188–233.  It is irrelevant that Mrs. Arnold was not personally subject to the District's hair length policy.  Because she complained that a school district policy discriminated against her son and nephew—both intended beneficiaries of the District's education program—on the basis of sex and alleges that the District retaliated against her on account of her complaints, she has asserted a violation of her own personal right not to be subjected to discrimination.  *See Jackson*, 544 U.S. at 179 n.3 (explaining that Title IX's prohibition against retaliation does not "'expand[] the class of people the statute protects beyond the specified beneficiaries'" because "Title IX's beneficiaries plainly include all those who are subjected to 'discrimination' 'on the basis of sex'") (quoting *id.* at 194 (Thomas, J., dissenting)); 20 U.S.C. § 1681(a).  Mrs. Arnold thus states a claim for intentional sex discrimination that is actionable under Title IX.[14]

The District's more restrictive view of Title IX standing is inconsistent with the law because courts—including at least one court in the Fifth Circuit—have held that parents

---

[14] Aside from arguing that Mrs. Arnold lacks standing, the District does not otherwise challenge Plaintiffs' Title IX retaliation claim, including the adequacy of their allegations regarding the District's retaliatory actions.  Plaintiffs allege that the District retaliated against Mrs. Arnold by, among other actions, subjecting her to police surveillance each time she visited District buildings and reprimanding her in a threatening manner at the December 2019 school board meeting.  *See* 2nd A. Compl. ¶¶ 382, 385–88.  These allegations are sufficient to survive a motion to dismiss.  *See Baggett v. Burnet Consol. Sch. Dist.*, No. A-06-CA-572 LY, 2007 WL 2823277, at *10 (W.D. Tex. Sept. 25, 2007) (explaining that plaintiff must allege that the "retaliator subsequently undertook some action disadvantageous to the actor"); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014) ("The burden on a plaintiff to show a *prima facie* case of retaliation is low.  Only a minimal threshold showing of retaliation is required." (citation and quotations omitted)).  A court could conclude that the District's alleged conduct intimidated Mrs. Arnold and had the effect of excluding her from full participation in the District's education programs and activities (e.g., freely providing public comment at school board meetings and accessing her son's and nephew's school to meet with District personnel).  Further, such actions "well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination."  *See Ollier*, 768 F.3d at 867–69 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (defining material adverse action under Title IX).

have standing to bring Title IX retaliation claims against school districts. In the Western District of Texas, for example, a court held that a mother had standing to assert a Title IX retaliation claim where she alleged that a district retaliated against her for filing a grievance about the district's inadequate response to another student's sexual abuse of her daughter. *See Alice L. v. Eanes Indep. Sch. Dist.*, No. A-06-CA-944-SS, 2007 WL 9710281, at *6 (W.D. Tex. Dec. 18, 2007); *see also T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1312 (D. Or. 2014) (holding that father engaged in protected conduct required to establish Title IX retaliation claim by complaining about another student's sexual harassment of his daughter); *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 376 (W.D. Pa. 2008) (holding that parents had standing to bring Title IX retaliation claims).

While the *Jackson* Court noted that teachers and coaches are often in the best position to vindicate the rights of students, it did not limit standing to those individuals. *See* 544 U.S. at 179–81. As a district court aptly recognized, "there is nothing in *Jackson* or the statute itself that limits the universe of Title IX retaliation victims to the employees of a funding recipient. Parents of a student who have complained of sexual discrimination against that student are therefore not foreclosed from an action for retaliation." *Dawn L.*, 586 F. Supp. 2d at 376. In fact, the *Jackson* Court's reasons for finding that teachers and coaches are effective advocates apply equally to parents. Like school employees, parents are well-positioned to vindicate the rights of their children, particularly when those children are minors. *See Jackson,* 544 U.S. at 181.

Lastly, the cases the District cites in support of its argument—*Rowinsky v. Bryan Independent School District*, 80 F.3d 1006 (5th Cir. 1996), and *A.W. v. Humble Independent School District*, 25 F. Supp. 3d 973 (S.D. Tex. 2014)—are inapposite. *See* Mot. 16. Neither of those cases involved allegations of retaliation. Instead, the parents in those cases asserted that their own Title IX rights had been violated because their children had allegedly experienced sex discrimination. *See Rowinsky*, 80 F.3d at 1009 n.4; *A.W.*, 25 F. Supp. 3d 973 at 985–86. Such claims are clearly distinguishable from retaliation claims. While "a parent has no standing to sue individually under Title IX on the basis of discrimination against her child . . . Title IX provides a private right of action for retaliation against a person because that person has complained of sex discrimination." *Alice L.*, 2007 WL 9710281, at *6 (citations and quotations omitted).

## 2. Accepting the District's Restrictive View of Standing Would Frustrate Title IX's Purpose and Enforcement Scheme.

Not only would accepting the District's narrow reading of Title IX's retaliation protections contravene applicable case law, it would also frustrate the statute's purpose and enforcement scheme. Title IX affords broad protections, providing that "*[n]o person* in the United States" shall be subjected to sex discrimination. *See* 20 U.S.C. § 1681(a) (emphasis added); *see also North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982) ("[I]f we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language." (citation omitted)). Robust protection against retaliation is integral to Title IX's enforcement scheme and to effectuating its purpose. As the Supreme Court has explained, Title IX's objective "would be difficult, if not impossible, to achieve if

persons who complain about sex discrimination did not have effective protection against retaliation." *See Jackson,* 544 U.S. at 180 ("[I]f retaliation were not prohibited, Title IX's enforcement scheme would unravel."). This principle applies with equal force to parents of minor schoolchildren. The federal government often relies on parents to submit complaints of sex discrimination and to provide information relevant to its investigation and resolution of those complaints. It also encourages parents to report incidents of sex discrimination to school officials. Excluding parents from protections against retaliation would impede the government's enforcement of federal civil rights laws in federally funded schools. In sum, the District's argument, if accepted, would frustrate the very purpose of Title IX in defiance of Supreme Court precedent and in opposition to the interests of law enforcement.

Because Mrs. Arnold has standing and alleges that the District retaliated against her for complaining that the hair length policy discriminates on the basis of sex, Plaintiffs sufficiently state a Title IX retaliation claim.

## CONCLUSION

Plaintiffs allege viable claims of sex discrimination and retaliation that are not barred by Fifth Circuit precedent. This Court should deny the District's motion to dismiss Plaintiffs' sex discrimination claims under the Equal Protection Clause and Title IX.

Dated: July 23, 2021

Respectfully submitted,

JENNIFER B. LOWERY
Acting United States Attorney

/s/ Elizabeth F. Karpati
ELIZABETH F. KARPATI
Assistant United States Attorney
State Bar No. 00794069
SDTX: 20567
1000 Louisiana, Suite 2300
Houston TX 77002
(713) 567-9767 (phone)
(713) 718-3303 (fax)
Elizabeth.Karpati@usdoj.gov

/s/ Emma Leheny
EMMA LEHENY
Principal Deputy General Counsel
United States Department of Education

VANESSA SANTOS
Attorney
Office of the General Counsel
United States Department of Education

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SHAHEENA A. SIMONS
Acting Deputy Assistant Attorney General
Civil Rights Division

WHITNEY M. PELLEGRINO
Acting Chief
Educational Opportunities Section
Civil Rights Division

KELLY D. GARDNER
TERESA YEH
Educational Opportunities Section
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 532-3863
Teresa.Yeh@usdoj.gov

*Attorneys for the United States*

21

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the foregoing Statement of Interest with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

/s/ *Elizabeth F. Karpati*
ELIZABETH F. KARPATI

Dated: July 23, 2021