**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **DARRYL GEORGE AND** | § | |
| **DARRESHA GEORGE,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **C.A. No. 3:24-CV-00012** |
| | § | |
| **GREG ABBOTT, KEN PAXTON,** | § | |
| **BARBERS HILL INDEPENDENT** | § | |
| **SCHOOL DISTRICT, GREG POOLE,** | § | |
| **LANCE MURPHY AND RYAN** | § | |
| **RODRIGUEZ** | § | |
| | § | |
| *Defendants*. | § | |

## BARBERS HILL INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................... ii

TABLE OF AUTHORITIES .................................................................................. iv

NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

STATEMENT OF THE ISSUE ............................................................................. 1

SUMMARY OF THE ARGUMENT ..................................................................... 2

STATEMENT OF MATERIAL FACTS ............................................................... 2

ARGUMENT & AUTHORITIES ......................................................................... 5

      A.  Standard of Review ................................................................................. 5

      B.  While the District's hair-length restriction draws a distinction between male and female students on its face, it does not amount to invidious discrimination against male students that violates the Equal Protection Clause, as a matter of law ........................................... 6

           1.  The District's rationale for drawing distinctions between male and female students in its dress and grooming code serves important governmental interests, as a matter of law ....................................................................................... 7

           2.  The District's policy is substantially related to advancing important governmental interests ............................................. 10

                i.  The District's dress and grooming code teaches students discipline that leads to success, which demonstrates the substantial relationship between the District's policy and the important governmental interests it serves ...................................... 10

                ii.  The District's dress and grooming code prepares students for future careers, which demonstrates the substantial relationship between the District's policy and the important governmental interests it serves ............................................................................. 11

a) Every branch of the United States military imposes hair-length restrictions on male personnel............................................................ 11

b) Caselaw from the analogous employment context demonstrates the substantial relationship between the District's policy and the important governmental interest of preparing students for potential careers................ 13

CONCLUSION AND PRAYER ...................................................... 16

CERTIFICATE OF SERVICE.......................................................... 17

APPENDIX ..................................................................ATTACHED

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Blau v. Fort Thomas Pub. Sch. Dist.*,
    401 F.3d 381 (6th Cir. 2005) ....................................................................8, 9

*Brown v. Chi. Bd. of Educ.*,
    824 F.3d 713 (7th Cir. 2016) ........................................................................16

*Canady v. Bossier Parish Sch. Dist.*,
    240 F.3d 437 (5th Cir. 2001) .....................................................................8, 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................5

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ........................................................................................7

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ......................................................................................13

*DIRECTV, Inc. v. Budden*,
    420 F.3d 521 (5th Cir. 2005) ..........................................................................6

*EEOC v. Catastrophe Mgmt. Sols.*,
    852 F.3d 1018 (11th Cir. 2016) ....................................................................14

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) ..........................................................................6

*Hanson v. Highland Home Holdings, Inc.*,
    1997 WL 86456 (N.D. Tex. Feb. 26, 1997) ................................................14

*Harper v. Blockbuster Entertainment Corp.*,
    139 F.3d 1385 (11th Cir. 1998) ....................................................................14

*Jacobs v. Clark Cnty. Sch. Dist.*,
    526 F.3d 419 (9th Cir. 2008) ..........................................................................8

*Jespersen v. Harrah's Operating Co.*,
    444 F.3d 1104 (9th Cir. 2006) ......................................................................14

iv

*Karr v. Schmidt*,
   460 F.2d 609 (5th Cir. 1972) ..................................................................... 6, 8

*Roe v. Cypress-Fairbanks Indep. Sch. Dist.*,
   53 F.4th 334 (5th Cir. 2022), *cert. denied sub nom.*, 144 S. Ct. 1002 (2024)......... 12, 13

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ................................................................................. 15

*Vernonia Sch. Dist. 47J v. Acton*,
   515 U.S. 646 (1995) ................................................................................. 15

*Vogel v. Veneman*,
   276 F.3d 729 (5th Cir. 2002) ..................................................................... 5, 6

*Willingham v. Macon Telegraph Publishing Company,*
   507 F.2d 1084 (5th Cir. 1975) .................................................................. 13, 14

## FEDERAL RULES

Fed. R. Civ. P. 56(a) .................................................................................. 5

Fed. R. Evid. 201 ...................................................................................... 12

## STATE STATUTES

Tex. Educ. Code § 11.002 .......................................................................... 2

Tex. Educ. Code §§ 11.151(b), .051(a) ......................................................... 3

Texas Education Code §§ 28.008, 28.016 ...................................................... 12

## OTHER AUTHORITIES

Equal Emp't Opp. Comm., *CM-619 Grooming Standards* (1989) ................................... 15

## NATURE AND STAGE OF PROCEEDINGS

Darryl and Darresha George filed suit against Governor Greg Abbott and Attorney General Ken Paxton, asserting claims under Section 1983, Title VI, Title IX, and state law. Dkt. 1. Darryl and Darresha George subsequently amended their complaint to add Barbers Hill Independent School District (the District), Dr. Poole, Murphy, and Rodriguez. Dkts. 2, 16, 31, 54. The District, Dr. Poole, Murphy, and Rodriguez moved to dismiss all claims against them, pursuant to Rule 12(b)(1) and (6). Dkts. 55-56. Governor Abbott and Attorney General Paxton, through separate counsel, moved to dismiss all claims against them, pursuant to Rule 12(b)(1) and (6), as well. Dkt. 60.

The Court heard oral argument on the Defendants' motions to dismiss. Dkts. 70, 74. Following the hearing, the Court issued an Order dismissing (1) all claims against all individual defendants; (2) all of Darresha George's individual claims; and (3) all claims against the District, except for Darryl George's Equal Protection gender discrimination claim. Dkt. 76. The District now moves for summary judgment on George's sole remaining claim.

## STATEMENT OF THE ISSUE

George cannot establish a viable Section 1983 claim for gender discrimination because the evidence conclusively establishes that the District has important governmental interests that support its dress and grooming code that restricts male students' hair from falling below the eyebrows, earlobes, and the top of a t-shirt collar. The evidence further conclusively establishes that the District's male hair-length policy is substantially related to advancing the important governmental interests identified by the District.

1

The Court determines whether the District's articulated rationale meets the intermediate scrutiny test, as a matter of law.

## SUMMARY OF THE ARGUMENT

Because all that remains is a facial challenge to the District's hair-length restriction for male students, the Court's factual inquiry is quite limited. Applying the intermediate scrutiny test, the District's hair-length restriction for male students serves several important governmental interests, including: (1) upholding community expectations, (2) ensuring student discipline and success, and (3) preparing students for the workforce. All of these stated rationales have been held by numerous Circuit Courts to be important governmental interests, as a matter of law. What is more, the District can prove, as a matter of law, that its hair-length restriction for male students advance these important governmental interests. As such, while the District's hair-length restriction draws a distinction between male and female students on its face, it does not amount to invidious discrimination against male students that violates the Equal Protection Clause, as a matter of law, and the District is entitled to summary judgment on George's sole remaining claim.

## STATEMENT OF MATERIAL FACTS

***The District in general.***

The District is a public school district organized under state law. *See* Tex. Educ. Code § 11.002. The District is governed by a seven-member Board of Trustees (the Board). *See* Barbers Hill Indep. Sch. Dist., *Board of Trustees*, https://www.bhisd.net/district/board-of-trustees (last visited August 20, 2024). State law entrusts the Board with the "exclusive

power" to govern and oversee the management of the District. Tex. Educ. Code §§ 11.151(b), .051(a). This includes enacting the policies that govern the District. *Id.*

***The District's Dress and Grooming Code and hair-length restriction for male students serve several important purposes.***

Since at least the late 1980s, the District's Board has enacted a dress and grooming code, one component of which includes a hair-length restriction for male students. *See* Affidavit of Dr. Poole, attached as Exh. A, at ¶ 5. The District's dress and grooming code and hair-length restriction for male students serve several important purposes, including reflecting community expectations, instilling student discipline, and ensuring student success. *Id.* at ¶¶ 4-5, 7-8. The Board bases its assessment of community expectations from hearing public comment during Board meetings, as well as their own experiences as members of the community. *Id.* at ¶¶ 4, 7.  The appearance of BHISD students is a point of pride in the community and the dress code is a unifying and team building expectation. *Id.* at ¶ 4. The dress code provides consistency for all students throughout their time in primary and secondary educational settings and helps instill discipline as it teaches students the value of following rules as they become young adults. *Id.* at ¶ 7.  The Board reviews the Student Code of Conduct, which includes the dress and grooming code, annually to ensure the community's standards and expectations are being followed. *Id.* at ¶ 5.

During the 2023-2024 school year, the District's hair-length restriction for male students provided that:

> Male students' hair will not extend, at any time, below the eyebrows or below the earlobes. Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend

3

below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down.

*See* Barbers Hill ISD – Dress and Grooming Code, attached as Exh. A-1, at pg. 2; *see also* Exh. A at ¶¶ 6, 13. This language remains in the current version of the District's dress code for the 2024-2025 school year. Exh. A at ¶ 6.

In addition to reflecting the community expectations and instilling student discipline, the hair-length restriction for male students also helps prepare male students specifically for success in the workplace. *Id.* at ¶¶ 4-5, 7-8. The hair-length restriction for male students teaches grooming standards and rules that male students very well may encounter in a professional setting after graduating from high school, including with the largest employers of District students in the area, such as chemical plants and refineries, police and fire departments, as well as all branches of the U.S. military which currently restrict the hair-length for male enlisted personnel and officers. *Id.* at ¶ 8.

### *Darryl George enrolls at the District, knowing about the hair-length restriction for male students and agreeing to follow it, only to willingly and persistently violate it.*

Darryl George enrolled at the District in August of 2023 as a Junior at Barbers Hill High School (BHHS). *Id.* at ¶ 10. Previously, George was enrolled at nearby Goose Creek Independent School District, which does not have a similar dress code restricting hair-length for male students. *Id.*

Upon enrollment at the District, George and his mother executed an acknowledgement form stating they were aware of, and agreed to follow, the District's dress and grooming code, including the hair-length restriction for male students. *See* Acknowledgement Form – Student Code of Conduct & Student Handbook 2023-24,

4

attached as Exh. A-2; *see also* Exh. A at ¶ 13. Nevertheless, George was in violation of the District's dress and grooming code on his first day at BHHS, as his hair fell below his ear lobes, eyebrows, or top of a t-shirt collar. Exh. A at ¶ 11. In accordance with District policy, George was sent to In School Suspension (ISS). *Id*. George refused to comply with the District's dress and grooming code the entirety of the school year and, therefore, was disciplined every day he was out of dress code. *Id*.

George re-enrolled at BHHS for the 2024-2025 school year. *Id*. at ¶ 12. At the beginning of the school year, George's mother executed a similar acknowledgement form stating she and George were aware of, and agreed to follow, the District's dress and grooming code, including the hair-length restriction for male students. *See* Acknowledgement Form – Acknowledgments/Consent 2024-25, attached as Exh. A-3; *see also* Exh. A at ¶ 13. Nonetheless, despite once again agreeing to abide by the District's dress and grooming code, George is still not in compliance, as his hair falls below his ear lobes, eyebrows, or top of a t-shirt collar. Exh. A at ¶ 12. As such, George was sent to ISS the first day of the school year and will continue to be disciplined every day he is not in compliance with the District's dress and grooming code. *Id*.

## ARGUMENT & AUTHORITIES

### A.    **Standard of Review.**

Summary judgment allows the Court "to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Vogel v.*

*Veneman*, 276 F.3d 729, 732 (5th Cir. 2002) ("We review the district court's grant of summary judgment as a matter of law de novo."). Summary judgment evidence and the inferences to be drawn from them are viewed in the light most favorable to the nonmovant. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005). However, legal conclusions, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

**B.    While the District's hair-length restriction draws a distinction between male and female students on its face, it does not amount to invidious discrimination against male students that violates the Equal Protection Clause, as a matter of law.**

In the Court's Order on the District's motion to dismiss, the Court denied the District's motion as to George's Equal Protection gender discrimination claim finding that *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972), did not foreclose the claim. *See* Dkt. 76 at Part III.C.2.a. The Court surveyed Supreme Court precedent and held intermediate scrutiny is the appropriate standard to apply to the male hair-length restriction in the District's dress and grooming code. *Id*. In denying the District's motion on George's Equal Protection gender discrimination claim, the Court observed that, while the reasons stated in the portion of the District's dress and grooming code that were included in George's complaint provided "insight for the District's motivation to have a dress code," they did not "provide [] support for the narrower question that forms the basis of this claim: what is the rationale for the dress code's distinction between male and female students?" *Id*.

The Court's Order frames the sole remaining question in this case: what is the District's rationale for distinguishing between male and female students and, does the

rationale meet the intermediate scrutiny test? While at the motion to dismiss stage the District was required to limit its arguments to the allegations in George's complaint, on summary judgment, the District can now articulate its rationale for the gender distinction in the dress and grooming code and meet the intermediate scrutiny test, as a matter of law.

        1.      *The District's rationale for drawing distinctions between male and female students in its dress and grooming code serves important governmental interests, as a matter of law.*

To prevail, the District must be able to articulate a rationale underpinning its policy that serves an important governmental interest and show that the District's policy is substantially related to advancing that interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985). The District's Superintendent, Dr. Poole, articulates several bases for the dress and grooming code and its inclusion of a hair-length restriction for male students, including: (1) community expectations; (2) student success; and (3) career readiness. Exh. A at ¶¶ 4-5, 7-8. Specifically, Dr. Poole's affidavit establishes that:

> The District views the dress and grooming code, including the hair-length restrictions for male students, as one of many standards that helps ensure the success of all students. It provides consistency for all students throughout their time in primary and secondary educational settings. Further, it helps instill discipline as it teaches students the value of following rules as they become young adults.

*Id.* at ¶ 7.

> The hair-length restrictions for male students also prepares and teaches male students grooming standards and rules they very well may encounter in a professional setting after graduating from high school. Specifically, the hair-length restrictions for male students prepares them for employment with some of the largest employers of District students in the area, including chemical plants and refineries, fire and police departments, and all branches of the U.S. military that historically have, and currently do, restrict hair length for male enlisted personnel and officers.

*Id.* at ¶ 8.

And each of these reasons have been held to sufficiently identify an important governmental interest that withstands intermediate scrutiny, as a matter of law. *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435–36 (9th Cir. 2008); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391–92 (6th Cir. 2005); *Canady v. Bossier Parish Sch. Dist.*, 240 F.3d 437, 443 (5th Cir. 2001); Order at pp. 17-18, *Woodley, et al. v. Tatum Independent School District*, C.A. No. 2:21-CV-00364-RWS (E.D. Tex. Oct. 13, 2023) (ECF No. 119) (Schroeder, J.). [1, 2]

In *Jacobs v. Clark County School District*, the Ninth Circuit considered whether a school's uniform policies "advance[d] important government interests" sufficient to withstand intermediate scrutiny. 526 F.3d at 435. The school's purported reasons for the uniform policies were (1) increasing student achievement; (2) promoting safety; and (3) enhancing a positive school environment. The Ninth Circuit acknowledged that all three goals were more than sufficient to overcome intermediate scrutiny. In doing so, the Ninth Circuit relied upon the Fifth Circuit's related decision in *Canady*. 240 F.3d at 443 (affirming the district court's order granting summary judgment on plaintiff's First and Fourteenth Amendment claims and acknowledging that the goals of "increas[ing] test

---

[1] In this Circuit, because courts historically applied *Karr* to school hair-length cases, which applies the rational basis test for hair-length regulations, there is no Fifth Circuit jurisprudence assessing school hair-length regulations under the intermediate scrutiny standard. Therefore, when analyzing hair-length regulations under the intermediate scrutiny test, to ascertain what justifications would be sufficient, the District relies on out-of-circuit authority, analogous cases, and a case from the Eastern District of Texas that applied the intermediate scrutiny analysis to a Texas school's male hair-length restriction.

[2] A copy of this Order is found at Tab 1 of the Appendix.

scores and reduc[ing] disciplinary problems throughout the school system" were "undoubtedly [] important interest[s]" served by a uniform policy).

The Ninth and Fifth Circuits are not alone in this regard. *See, e.g.*, *Blau*, 401 F.3d at 391–92 (affirming the district court's order granting summary judgment on plaintiff's First and Fourteenth Amendment claims, and acknowledging that "increasing school unity and pride, . . . [and] improving test scores . . . are all important governmental interests [served by a school uniform policy]").

Further, in October 2023, in a very similar case, the Eastern District of Texas ruled that a school district's stated articulated bases for hair-length and style restrictions for male students – which included community expectations, student success, and career readiness – survived intermediate scrutiny, as a matter of law. Tab 1 of Appendix, Order at pp. 17-18, *Woodley*, C.A. No. 2:21-CV-00364-RWS (citing to *Canady v. Bossier Parish Sch. Dist.*, 240 F.3d 437, 443 (5th Cir. 2001)).

Here, the District has offered evidence that identifies the important governmental interests served by its hair-length restriction for male students, including community expectations, student discipline and achievement, and career readiness. Exh. A at ¶¶ 4-5, 7-8. Because courts have already held that these rationales are important governmental interests, as a matter of law, the District can satisfy the first part of the intermediate scrutiny analysis, as a matter of law.[3]

---

[3] To preempt any argument by George that discovery is needed in order to dispute the District's stated rationale, this argument fails on its face. All that remains in this case is a facial challenge: if the District's policy passes constitutional muster, George can be disciplined under the policy for his undisputed violations of the policy and, if the policy doesn't pass muster, the District can no longer enforce the policy against George. In this context, the District's articulated

2. *The District's policy is substantially related to advancing important governmental interests.*

The District can satisfy the second part of the intermediate scrutiny analysis, too. That is because the District can establish that the policy is substantially related to its goals, as a matter of law. As explained by the District's Superintendent, Dr. Poole, the District's policy supports student success and prepares students for the workforce. *See* Exh. A at ¶ 8.

       i.    The District's dress and grooming code teaches students discipline that leads to success, which demonstrates the substantial relationship between the District's policy and the important governmental interests it serves.

Dr. Poole explains that upholding the standards of the District's dress and grooming code, including the hair-length restriction for male students, provides the necessary structure for students during their formative years to ensure success at every stage of their lives. *Id*. at ¶ 7. Requiring students to follow rules outlined in the District's dress and grooming code – or face consequences for disobedience – helps instill discipline and the necessary boundaries for students to learn respect for authority that will benefit them inside, and outside, of the school walls. *Id*.

---

rationale is the rationale; regardless if George agrees with it or not. No amount of discovery can dispute sworn testimony provided by the Superintendent that outlines the District's rationale and important governmental interests in having a dress code that restricts hair-length for male students. *See* Tab 1 of Appendix, Order at p. 18, *Woodley*, C.A. No. 2:21-CV-00364-RWS.

ii.  <u>The District's dress and grooming code prepares students for future careers, which demonstrates the substantial relationship between the District's policy and the important governmental interests it serves.</u>

**a) Every branch of the United States military imposes hair-length restrictions on male personnel.**

Dr. Poole identifies the military as a prime example of a career path where male students will face dress and grooming standards, including hair-length restrictions. *Id*. ¶ 8. It is beyond dispute that every branch of the United States military imposes hair-length restrictions on male enlistees and officers, even though the same length restrictions do not apply to female personnel:

- <u>The U.S. Army</u>: *Wear and Appearance of Army Uniforms and Insignia*, Army Reg. 6701-1, Chapter 3-2 (dated January 26, 2021), found at https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN30302-AR_670-1-000-WEB-1.pdf (last accessed August 19, 2024);

- <u>The U.S. Marine Corps</u>: *Marine Corps Uniform Regulations*, MCO 1020.34H, Chapter 1004-7(a)(1) (dated May 2018), found at https://www.marines.mil/portals/1/Publications/MCO%201020.34H%20v2.pdf?ver=2018-06-26-094038-137 (last accessed August 19, 2024);

- <u>The U.S. Navy</u>: *Navy Uniform Regulations*, Article 2201.1, found at https://www.mynavyhr.navy.mil/References/US-Navy-Uniforms/Uniform-Regulations/Chapter-2/2201-Personal-Appearance/#2201.1 (last accessed August 19, 2024);

11

- The U.S. Air Force and Space Force: *Dress and Personal Appearance of Department of the Air Force Personnel*, Instruction 36-2903, Chapter 3.1 (dated February 29, 2024), found at https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-2903/dafi36-2903.pdf (last accessed August 19, 2024), https://www.spaceforce.mil/News/Article-Display/Article/3691078/daf-publishes-revised-dress-personal-appearance-instruction/ (last accessed August 19, 2024); and

- The U.S. Coast Guard: *Uniform Regulations*, U.S. Coast Guard, COMDTINST M1020.6K, Chapter 2.B (dated July 7, 2020), found at https://media.defense.gov/2020/Jul/09/2002451108/-1/1/0/CIM_1020_6K.PDF (last accessed August 19, 2024).[4]

It is not possible for George to controvert the requirements or expectations of the armed forces of the United States, which impose different grooming rules on male personnel. Moreover, as a matter of law, Texas schools are required to ensure that their graduates are college, career, or military ready. *See generally* Texas Education Code §§ 28.008, 28.016. Further, the courts have long recognized that schools have wide latitude in making pedagogical and policy choices that courts should not second-guess. *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022), *cert. denied sub nom.*, 144 S. Ct. 1002 (2024) ("Courts afford broad deference to school officials and should

---

[4] The District requests the Court take judicial notice of the various military branches' dress and grooming policies. *See* Fed. R. Evid. 201.

not 'second-guess[ ] the disciplinary decisions made by school administrators.'" (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Thus, the District's policy choice as to how to accomplish the important governmental interest of preparing students for the workforce – which under Texas law is also a statutory directive – including introducing male students to restrictions on hair length, is entitled to broad deference. *See id.*

> **b) Caselaw from the analogous employment context demonstrates the substantial relationship between the District's policy and the important governmental interest of preparing students for potential careers.**

Beyond the military context, the Court can find, as a matter of law, that the District's policy is substantially related to the important governmental interest of preparing students for careers. Circuit Courts, including the Fifth Circuit, are unanimous in upholding dress and grooming codes that draw gender-based distinctions in the employment context. In *Willingham v. Macon Telegraph Publishing Company*, the Fifth Circuit addressed an employer's policy implementing different male and female grooming standards. 507 F.2d 1084 (5th Cir. 1975) (en banc). Title VII, the Fifth Circuit acknowledged, was designed "to achieve equality in employment opportunities and remove barriers" and "provide equal access to the job market for both men and women." *Id.* at 1091 (citations omitted). But the Fifth Circuit held that Title VII provided no recourse to complaints about an employer's hair-length requirements:

> [A]n employer cannot have one hiring policy for men and another for women if the distinction is based on some fundamental right. But a hiring policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his

13

business than to equality of employment opportunity . . . Hair length is not immutable and in the situation of employer *vis a vis* employee enjoys no constitutional protection. If the employee objects to the grooming code he has the right to reject it by looking elsewhere for employment, or alternatively he may choose to subordinate his preference by accepting the code along with the job.

*Id.*

And courts have repeatedly relied on *Willingham. See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("[D]iffering hair length standards for men and women do not violate Title VII, a holding which squarely forecloses the plaintiffs' discrimination claim"); *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1028-29, n.4 (11th Cir. 2016) (reaffirming *Willingham* and *Harper*); *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104 (9th Cir. 2006) (en banc) (finding employer's grooming policy that required female bartenders to wear makeup and male bartenders to keep their hair short did not constitute impermissible sex stereotyping), at 1110 ("We have long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits . . . The material issue under our settled law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an 'unequal burden' for the plaintiff's gender.") (collecting cases), at 1112 ("The requirements must be viewed in the context of the overall policy."); *Hanson v. Highland Home Holdings, Inc.*, No. 3:96-CV-0011-D, 1997 WL 86456, at *2 (N.D. Tex. Feb. 26, 1997) ("An employer's different grooming preferences for males and females are not prohibited by Title VII.").

14

Indeed, the unanimity has led the EEOC in its guidance to forgo bringing claims challenging gender-based distinctions in a workplace dress code. The EEOC succinctly explains in its guidance that,

> the circuit courts of appeals have unanimously concluded that different appearance standards for male and female employees, particularly those involving hair length where women are allowed to wear long hair but men are not, do not constitute sex discrimination under Title VII.

*See* Equal Emp't Opp. Comm., *CM-619 Grooming Standards* (1989). And students cannot be entitled to rights that have been uniformly denied to adults. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506-07 (1969) (the Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools."); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995) ("A proper educational environment requires close supervision of schoolchildren, as well as enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult. While we do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional duty to protect, we have acknowledged that for many purposes school authorities act in loco parentis, with the power and indeed the duty to inculcate the habits and manners of civility.") (internal quotations and citations omitted).

By contrast, George cannot adduce any evidence that men and women do not face comparable burdens under the District's dress code, generally, or in the adult workplace. And, as such, it is undisputed that the District's male hair-length requirement is substantially related to the important governmental interest of preparing students for the

15

workforce, as George and other students may very well face hair-length restrictions in their future careers, and the law allows employers to impose dress and grooming codes that draw distinctions between male and female employees.

## CONCLUSION AND PRAYER

Ultimately, this is a case about whether the rationale for the District's male hair-length restriction (as a part of its larger dress and grooming code) is substantially related to serving an important governmental interest. And, as explained above, it is. Conversely, it is not a case about whether everyone agrees with the District's policy or thinks it wise. *See* Dkt. 76 at p. 30 ("[N]ot everything that is undesirable, annoying, or even harmful amounts to a violation of law, much less a constitutional problem.") (quoting *Brown v. Chi. Bd. of Educ.*, 824 F.3d 713, 714 (7th Cir. 2016)). Because the District can show, as a matter of law, that its male hair-length restriction is substantially related to serving important governmental interests, the District is entitled to summary judgment, as a matter of law.

For the above reasons, George's remaining Equal Protection gender discrimination claim fails. Barbers Hill Independent School District requests the Court grant it summary judgment against George's sole remaining claim, dismiss George's Equal Protection gender discrimination claim, enter final judgment, and award any other relief the District is entitled to.

16

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.


JONATHAN G. BRUSH
Attorney-in-Charge
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No.  3227731
ademmler@rmgllp.com
RICHARD A. MORRIS
State Bar No. 14497750
Fed. I.D. 15004
rmorris@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR BARBERS HILL ISD


## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.


Attorney for Barbers Hill Independent School District

17