Case 3:24-cv-00012   Document 124   Filed on 10/10/24 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
October 10, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-12

DARRYL GEORGE, *ET AL.*, *PLAINTIFFS*,

v.

GREG ABBOTT, *ET AL.*, *DEFENDANTS*.

---

**MEMORANDUM OPINION AND ORDER
ENTERING FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

---

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

This is a civil-rights case brought under § 1983, Title VI, Title IX, and Texas law. Dkt. 54. Barbers Hill Independent School District ("BHISD") placed Darryl George ("George") in in-school suspension ("ISS") for over a year because his hair violated the school's dress and grooming policy. *Id.* ¶ 25–26; Dkts. 82-4, 102, 103. George and his mother, Darresha George, sued BHISD and three of its employees (collectively, "the District"), Governor Greg Abbott, and Attorney General Ken Paxton, seeking equitable relief and money damages. Dkt. 54. The court dismissed most of the

plaintiffs'[1] claims in August, leaving only George's Equal Protection sex-discrimination claim. Dkt. 76. Although George withdrew from the District on August 20th, he now requests injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunction. Dkts. 81, 102, 103.

The court held a hearing on October 3, 2024, regarding two issues: (1) George's standing post-withdrawal and (2) the merits of his application for injunctive relief. Minute Entry 10/03/2024. After careful consideration of the record, the parties' arguments, and the applicable law, the court submits the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a).[2] For the reasons stated below, the court **DENIES** the application.

## I.   Legal Standard

1. Findings of fact and conclusions of law are required in "granting or refusing an interlocutory injunction." Fed. R. Civ. P. 52(a)(2). A district

---

[1] Darresha George brought exclusively state-law claims. Because the court dismissed those claims, only George and the District remain as parties.

[2] George requests findings of fact and conclusions of law regarding the court's orders quashing the deposition of the District's corporate representative and denying injunctive relief. Dkts. 100, 113, 121. Although Rule 52 does not require the court to state its findings or conclusions when ruling on a motion to quash, the court's recent order moots George's request. See Dkt. 120 (permitting the parties to proceed with discovery).

court must "find the facts specially and state its conclusions of law separately." *Id.* 52(a)(1). "Rule 52(a) does not require that the district court set out findings on all factual questions that arise in a case." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir. 1997). Instead, a court satisfies Rule 52 if it "afford[s] the reviewing court a clear understanding of the factual basis for [its] decision." *Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d 502, 506 (S.D. Tex. 2021) (quoting *Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 234 (5th Cir. 1985)).

2. To the extent that any factual finding reflects or is better understood as a legal conclusion, it is also deemed a conclusion of law. Likewise, to the extent that any legal conclusion reflects or is better understood as a factual finding, it is also deemed a factual finding.

## II. Findings of Fact

3. The District's Student Handbook includes a dress and grooming policy. Dkt. 54-2. The policy provides, in relevant part:

> Male students' hair will not extend, at any time, below the eyebrows, or below the ear lobes when let down. Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down.

Dkt. 54 ¶ 23.

4. The policy's stated purpose is "to teach grooming and hygiene, instill discipline, maintain a safe and positive learning environment, prevent disruption, avoid safety hazards, and teach respect for authority." Dkt. 54-2 at 15.

5. The policy does not restrict the length of female students' hair. *Id.* at 16.

6. George's dreadlocks, or "locs," when let down, would extend "below the top of a t-shirt collar, below the eyebrows, or below the earlobes." Dkt. 81 ¶ 7.

7. On August 31, 2023, the District placed George in ISS because his hair violates the policy. Dkt. 54 ¶¶ 25–26.

8. George filed this lawsuit on September 23, 2023, one month after his placement in ISS. Dkt. 1.

9. On February 23, 2024, George first sought a temporary restraining order stylized as a request for a "pre-motion conference." Dkt. 57.

10. A pre-motion conference is a type of hearing employed by some judges in the Southern District of Texas but not contemplated by the Galveston Division Rules of Practice. Dkt. 121 at 5 n.2.

11. The lawsuit had been on file for five months before George first requested injunctive relief. Dkts. 1, 57.

12. Although George's request was procedurally improper, the court's primary reason for denying it was his undue delay in seeking relief. *See* Dkt. 59 ("[T]he plaintiffs' delay in seeking emergency injunctive relief is fatal to their contention that they risk immediate and irreparable harm absent a TRO.").

13. Because the time for emergency relief had long passed, the court invited George to seek a preliminary injunction instead. *Id.* ("The plaintiffs are free to file an application for preliminary injunction which the court will consider in due course.").

14. In the months that followed, George did not file an application for preliminary injunction.

15. George filed his second request for injunctive relief on August 14, 2024, soon after the court entered the order dismissing most of George's claims. Dkts. 76, 81.

16. That same day, George began his senior year of high school. Dkt. 81-2 at 2. Again, the District placed him in ISS for violating the hair policy. Dkt. 82-4.

17. George withdrew from the District on August 20, 2024, citing the harmful impacts of detention on his mental health. Dkts. 102, 103, 112.

18. At that point, George had been in ISS for an entire academic year. Dkts. 1, 82-4.

19. In light of George's withdrawal, Dkts. 102, 103, the court ordered the parties to brief whether George still had standing. Dkt. 106. To prevent discovery from improperly progressing if the court lacked jurisdiction, the court quashed George's deposition of the District's corporate representative. Dkt. 100.

20. George soon enrolled at Sterling High School in Goose Creek Independent School District. Dkt. 112.

21. Despite his transfer, George's disciplinary record reflects his year-long relegation to ISS for violating the policy. Dkts. 82-1, 82-4.

22. His single-car family has coordinated driving him to school and his father to work, while his siblings continue to ride the bus to District schools. Dkt. 112 at 2.

23. George desires and intends to reenroll in the District where he still resides. *Id.* at 1–2.

24. If George reenrolls, the District will enforce the policy against him. Dkt. 82-1 at 1–2.

25. The court held a hearing on October 3, 2024, to hear arguments on George's standing and the merits of his claim for injunctive relief. Minute Entry 10/03/2024.

26. While the parties agreed George has standing to seek compensatory damages, the District maintained that his withdrawal prevents him from pursuing injunctive relief. Dkts. 110, 111. The District further argued that George's claim for such relief fails on the merits. Dkt. 84.

### III. Conclusions of Law

#### a. Jurisdiction

27. The "irreducible constitutional minimum of standing" consists of three elements: (1) the plaintiff must have suffered some concrete, particularized, and imminent injury in fact; (2) there must be a causal connection between the plaintiff's injury and the defendant's challenged action; and (3) a favorable decision from the court will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

28. When a student who challenges a school's policy withdraws during the litigation, the Fifth Circuit has held the student lacks standing to pursue injunctive relief if they do not intend to reenroll. *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 382–83 (5th Cir. 2016). Because the student has chosen to remove themselves from the school's reach, a similar injury in the

future is unlikely. *Id.* at 382; *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 109–10 (1983) (finding plaintiff lacked standing for injunctive relief because his threat of future injury was speculative, not imminent or certain). And because an order enjoining the school policy would not benefit the non-student, the "possibility of future injury is not redressable by the court." *Campbell*, 842 F.3d at 382.

29. Although this case bears some resemblance to *Campbell* and *Lyons*, it differs in two important ways. First, George desires and intends to reenroll in the District where he still resides. Dkt. 112 at 1–2; *cf. Campbell*, 842 F.3d at 382 (emphasizing that student lacked standing because he did not intend to return to the school). And unlike the plaintiff in *Lyons*, whether George will suffer injury upon reenrollment is certain—the District has unequivocally stated it will enforce the policy against him. Dkt. 82-1 at 1–2; *cf. Lyons*, 461 U.S. at 105 (finding it speculative and unlikely that the plaintiff would be illegally choked by the police again; thus no live controversy remained).

30. Additionally, George continues to suffer collateral consequences of the District's policy. Dkt. 112. George's disciplinary record reflects his year-long detention for violating the policy. Dkts. 82-1, 82-4. This sanction is a sufficient injury for Article III standing. *See Esfeller v. O'Keefe*, 391 F. App'x

337, 339–40 ("Although, absent the blemish on his academic record, Esfeller would not have a live controversy or standing to challenge the validity of the Code now that he is no longer subject to it, the sanction is an actual, concrete injury sufficient to satisfy Article III."). And on a practical level, George remains burdened by the policy: his family must coordinate driving him to school and his father to work with a single car. Dkt. 112 at 2.

31.     For these reasons, the court retains jurisdiction over George's claims for equitable relief despite his withdrawal.

### b. Injunctive Relief

32.     To obtain injunctive relief, George must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). The Fifth Circuit has repeatedly cautioned that injunctive relief "is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (internal quotation marks and citation omitted). If the applicant fails to establish the first or second

element, the court need not consider the others. *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 225 (5th Cir. 2010); *Wireless Agents, L.L.C. v. T–Mobile USA, Inc.*, No. 3:05–CV–0094–D, 2006 WL 1540587, at *2 (N.D. Tex. June 6, 2006).

### i. Likelihood of Success on the Merits

33. The first element requires George to show he has a substantial likelihood of success on the merits. Only George's Equal Protection sex-discrimination claim remains. "To establish an equal protection claim, [George] must first show that 'two or more classifications of similarly situated persons were treated differently.'" *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.*

34. The parties do not dispute that the hair-length policy applies only to males. And the Supreme Court's precedent is clear: "heightened scrutiny . . . attends 'all gender-based classifications'"—including the one here. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quoting *J.E.B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 136 (1994)). Accordingly, "[i]ntermediate scrutiny places the burden 'entirely on the State' to demonstrate an

'exceedingly persuasive' justification for the classification." *Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*, 421 F. App'x 366, 372 (5th Cir. 2011) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

35.  When evaluating a policy under intermediate scrutiny, the court must first determine whether the government's stated goals qualify as important or substantial. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982). For most of this litigation, the District has failed to "provide any reason for the sex-based distinctions in its dress code." Dkt. 76 at 14–15. The District now asserts the policy's gender distinction serves the following interests: (1) "community expectations," (2) "student discipline and achievement," and (3) "career readiness." Dkt. 84 at 10–11.

36.  The District contends these constitute important governmental interests as a matter of law in the school setting. *See Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 443 (5th Cir. 2001) ("[I]mproving the educational process is undoubtedly an important interest" . . . "reduc[ing] disciplinary problems" . . . "is in no way related to [the violation of constitutional rights]); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435 (9th Cir. 2008) (stating "increasing student achievement . . . unquestionably qualif[ies] as important") (internal quotation marks omitted); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391–92 (6th Cir. 2005) (finding "promoting good

behavior" and "reducing discipline problems" are "important governmental interests"). George offers no contrary authority; indeed, he did not file a reply to the District's response to his application. Dkt. 84.[3]

37. Next, the government must show its policy is "substantially related to the achievement" of its stated interests. *Virginia*, 518 U.S. 532–33 (internal quotation marks omitted). To show the policy is substantially related to advancing community expectations, student success, and career preparation, the District cites dress and grooming codes that discriminate based on gender in other spheres of public life. Dkt. 84 at 14–16. The District points to hair-length restrictions imposed by all U.S. military branches on male personnel but not females. *Id.* Similar policies have also survived in the employment context. *See, e.g.*, *Willingham v Macon Tel. Publ'g Co.*, 507 F.2d 1084, 1091 (5th Cir. 1975) (finding a hiring policy that distinguishes between genders for hair-length does not offend the Constitution); *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1112 (9th Cir. 2006) ("We have long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits.").

---

[3] George filed a reply to the District's supplemental response to the application. Dkts. 116, 118. However, that briefing dealt with the question of George's standing, not the merits of his sex-discrimination claim.

38. The District asserts that students "cannot be entitled to rights that have been uniformly denied to adults," Dkt. 84 at 18, suggesting the policy is valid here because it has been found valid in other contexts. George has failed to offer any reason the court should view the military and employment policies as inapposite to the school setting.

39. The District has offered persuasive arguments for justifying the policy under intermediate scrutiny. And, by failing to respond, George has left those arguments unchallenged. At this stage, the District has the more compelling case on whether George will prevail on his Equal Protection sex-discrimination claim. *See M.T., et al., v. Tatum Ind. Sch. Dist.*, No. 2:21-CV-00364-RWS, Dkt. 119 at 17–18 (E.D. Tex. Oct. 13, 2023) ("Plaintiffs fail to cite any legal authority to show why [the district's] articulated bases do not withstand intermediate scrutiny as a matter of law. And the [c]ourt declines to create any such authority that would find [otherwise]."). Accordingly, the court finds that George has not shown a substantial likelihood of success on the merits of his Equal Protection sex-discrimination claim.

### ii.   Irreparable Harm and Undue Delay

40. Moreover, George has failed to show a substantial threat of irreparable injury. "An irreparable harm is one for which there is no adequate remedy at law," such as monetary damages. *Book People, Inc. v. Wong*, 91

F.4th 318, 340 (5th Cir. 2024) (internal quotation marks and citations omitted); *see also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People*, 91 F.4th at 340–41 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)).

41.    That said, a presumption of irreparable harm may be vitiated by a delay in seeking relief. *See, e.g.*, *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 ("[A]ny such presumption of irreparable harm is inoperative if the plaintiff has delayed . . . moving for preliminary injunctive relief."); *Talon Transaction Techs., Inc. v. StoneEagle Servs., Inc.*, No. 3:13-CV-00902-P, 2013 WL 12173219, at *2 (N.D. Tex. July 24, 2013) ("[A] delayed filing normally is at odds with the notion of irreparable harm."). A substantial delay "demonstrat[es] that there is no apparent urgency to the request." *Wireless Agents, L.L.C.*, 2006 WL 1540587, at *3 (quoting *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995)).

42.    On February 23, 2024, George requested "a pre-motion conference" to request an emergency injunction hearing—his first request for such relief. Dkt. 57. At that point, the lawsuit had been on file for five months,

all which George had spent in ISS. Dkt. 54. His delay fundamentally undercut the urgency of his request and compelled the court to find that irreparable harm was not established. Dkt. 59 ("[T]he plaintiffs' delay in seeking emergency injunctive relief is fatal to their contention that they risk immediate and irreparable harm absent a TRO."); *see Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request).

43. No one disputes that George reurged his request for injunctive relief immediately following the court's ruling on the District's motion to dismiss and at the start of his senior year. Dkts. 57, 81. But the fact remains that though George filed this lawsuit on September 23, 2023, Dkt. 1, he then endured ISS for more than 170 days before filing this application on August 14, 2024, nearly one year later. Dkts. 81, 112; *see GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief." (citations omitted)).

44. George has not shown sufficient reasons for the delay in seeking injunctive relief. *See Wireless Agents, L.L.C.*, 2006 WL 1540587, at *3 ("Absent a good explanation," delay is fatal to a preliminary injunction).

Although George erroneously believed he could not seek injunctive relief while the parties litigated the defendants' motions to dismiss, a mistake of law does not constitute a "good explanation" for failing to seek timely relief. *See id.*; Dkts. 56, 60; Minute Entry 10/03/2024.

45.     "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Granting the injunction now would improperly reinstate the status quo as it existed prior to this litigation and long before George filed this application. *See McKinney ex rel. N.L.R.B. v. Creative Vision Res., L.L.C.*, 783 F.3d 293, 295 (5th Cir. 2015) (finding the district court abused its discretion when it enjoined conduct in 2014 to preserve a status quo from 2011). Accordingly, George's undue delay provides an independent reason for the court to deny both his first and second requests for emergency injunctive relief. *See BeatStars, Inc. v. Space Ape Ltd.*, 624 F. Supp. 3d 681, 689 (W.D. Tex. 2022) ("[D]istrict courts in this circuit have generally declined to grant injunctive relief where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief." (citation omitted)).

46.     As the plaintiff has failed to establish the first two elements necessary for injunctive relief, there is no need to consider the others. *See,*

*e.g.*, *La Union Del Pueblo Entero*, 608 F.3d at 225 ("Because we have determined that [movant] cannot show a substantial likelihood of success on the merits, we need not address [the] additional arguments regarding the other necessary elements for preliminary injunctive relief."); *Wireless Agents, L.L.C.*, 2006 WL 1540587 at *2 (finding the court need not make findings on all the elements if the applicant fails to establish either of the first two factors).

\* \* \*

For these reasons, the court denies George's request for a temporary restraining order.

Signed on Galveston Island this 10th day of October, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE