Case 3:24-cv-00012   Document 167   Filed on 04/03/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
April 03, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:24-cv-12

Darryl George, *et al.*, *Plaintiffs*,

v.

Greg Abbott, *et al.*, *Defendants*.

## MEMORANDUM OPINION

Jeffrey Vincent Brown, *United States District Judge*:

The court issued its order denying the defendant's motion for summary judgment, Dkt. 85, on March 25, 2025. Dkt. 166. This opinion supplements that order.

Darryl George filed this lawsuit to challenge Barbers Hill Independent School District's ("the District") grooming policy. Dkt. 54. The court dismissed all George's claims except his Equal Protection sex-discrimination claim against the District. Dkt. 76. George applied for a temporary restraining order and preliminary injunction soon after, and the District moved for summary judgment. Dkts. 81, 85. The court denied injunctive

relief,[1] granted a continuance on the motion for summary judgment, and invited supplemental briefing on the District's motion. Dkts. 120, 121, 124; Minute Entry 10/29/2024. The court denied the defendant's motion for summary judgment, Dkt. 166, and now issues this opinion explaining why.

## I.  Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict

---

[1] George appealed. Dkt. 131. The court retains jurisdiction over the merits of his Equal Protection claim while the Fifth Circuit reviews the denial of preliminary injunction. *See, e.g., Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009) ("[A] district court can proceed to resolve the merits of a case during the pendency of an interlocutory appeal from the grant or denial of a preliminary injunction." (citation omitted)).

for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

**II.   Analysis**

    **A.   Background**

George alleges the District's grooming policy discriminates based on sex in violation of the Fourteenth Amendment's Equal Protection Clause. Dkt. 54 ¶ 2. The challenged policy provides, in relevant part:

> Male students' hair will not extend, at any time, below the eyebrows or below the ear lobes. Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let

down.[2]

Dkt. 54-2 at 16. While the policy does not restrict female students' hair length, the District has had restrictions for male students for over 30 years. *Id.*; 85-1 at 3. The District's Board of Trustees, whom Texas law authorizes to enact district-wide policies, reviews this policy annually. Dkt. 85-1 at 3; Tex. Educ. Code §§ 11.151(b), .051(a).

At the motion-to-dismiss stage, the District failed to provide a rationale for the policy's distinction between males and females. Dkts. 56 at 20–21 (explaining only the District's general motivation for having a grooming policy); 76 at 14–15. The District now asserts that, as a matter of law, the policy's facial classification between male and female students does not amount to invidious discrimination against male students in violation of the Constitution. Dkt. 85 at 7.

George's response does not address the merits of the District's motion. Dkt. 97. Instead, he recites unsupported factual allegations from his live complaint and urges the court to defer its ruling until adequate time for discovery has passed. *Id.*; *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.

---

[2] The parties do not dispute that George's hair "extend[s] below the top of a t-shirt collar, [] eyebrows, or [] earlobes when let down," nor that the District placed him in in-school suspension for all junior year as a result. Dkts. 54-2 at 16; 81 ¶ 7; 85 at 9–10.

1994) ("[U]nsubstantiated assertions are not competent summary judgment evidence."). That response was seven months ago. And despite George's insistence then that he could "prove [his claim] when given the chance" to conduct discovery, he failed to submit any supplemental briefing after deposing five District employees—including the superintendent, a board member, and the corporate representative—and exchanging written discovery.³ Dkts. 97 at 5; 153 ¶¶ 4–7. Because George did not file a supplemental response addressing the merits, the court finds the District's motion virtually unopposed. S.D. Tex. Loc. R. 7.4 ("Failure to respond to a

---

³ Instead, George filed a motion to compel and extend discovery related to his already dismissed race-based claims. Dkts. 76; 152 (continuing to seek discovery of the policy's enforcement by race and ethnicity). In that motion, he stresses the importance of evaluating a policy's "disparate impact" in an Equal Protection gender-discrimination challenge and claims he can show disparate impact only with racial and ethnic enforcement data. Dkt. 152 ¶¶ 2, 6, 12. But that's wrong.

True, the state may not engage in "intentionally discriminatory conduct that has an adverse disparate impact on [men or women] unless the state can show an 'exceedingly persuasive justification for that action.'" *Shipp v. McMahon*, 234 F.3d 907, 913, *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002) (quoting *United States v. Virginia*, 518 U.S. 515, 530 (1996)). But courts consider "adverse disparate impact" only in the context of a *neutral* policy that does not discriminate on its face. *See, e.g.*, *id.* (evaluating disparate-impact theory in action challenging facially neutral law-enforcement policy); *Beltran v. City of El Paso*, 367 F.3d 299, 304–05 (5th Cir. 2004) (same); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273–74 (1979) (explaining the court considers disparate impact when a statute is gender-neutral on its face). Because George brings a facial challenge to the District's policy, which clearly treats male and female students differently, disparate impact is not part of the equation. Dkt. 85 at 14 n.3.

motion will be taken as a representation of no opposition."). This does not, however, minimize the District's burden under Rule 56. *John v. State of La. (Bd. of Ts. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985) ("[S]ummary judgment cannot be supported solely on the ground that [the plaintiff] failed to respond to [the defendant's] motion for summary judgment," even where local rule provides failure to respond renders a motion unopposed).

### B.  Intermediate Scrutiny

Turning now to the merits, the court begins with the presumption that gender classifications are invalid. *Virginia*, 518 U.S. at 532. "To withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197 (1976). The government must offer an "exceedingly persuasive justification for the classification." *Virginia*, 518 U.S. at 524 (quotations and citation omitted). This "heightened scrutiny . . . attends all gender-based classifications," including hair-length restrictions. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quotations and citation omitted); *see also Karr v. Schmidt*, 460 F.2d 609, 616, 617 n.26 (5th Cir. 1972) (stating courts should apply heightened scrutiny

in "an action alleging discriminatory enforcement of a grooming code"); Dkt. 76 at 11–15.

### 1. Important Governmental Interests

The District asserts the grooming policy's gender classification serves three governmental interests that are "important" as a matter of law: (1) upholding community expectations, (2) promoting student success and discipline, and (3) preparing students for the work force. Dkt. 85 at 8–9; *see Craig*, 429 U.S. at 197. The District supports its stated interests with an affidavit of Dr. Greg Poole, the District's superintendent, and numerous government websites. Dkts. 85 at 16–17; 85-1 at 2–6.

Courts have held these interests "important" as a matter of law when applying intermediate scrutiny, albeit in the First Amendment context. Dkt. 85 at 13–14; *see, e.g.*, *Canady v. Bossier Par. Sch. Dist.*, 240 F.3d 437, 443 (5th Cir. 2001) (holding uniform policy's goals of increasing test scores and reducing disciplinary problems as "undoubtedly [] important interest[s]"); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391–92 (6th Cir. 2005) (same, along with increasing school unity); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435 (9th Cir. 2008) (holding uniform policy survived intermediate scrutiny because it served to increase student achievement, promote safety, and enhance a positive school environment). Accordingly,

the District clears the first hurdle in the court's intermediate-scrutiny analysis.

### 2. Substantial Relationship between Policy and Achieving Interests

Next, the District must establish the grooming policy's gender classification is substantially related to its stated interests in community expectations, student success, and career readiness. *See Craig*, 429 U.S. at 197.

The District determines community expectations by hearing public comment at Board meetings, taking feedback from the District's administration, and drawing on the trustees' experiences as community members. Dkt. 85-1 at 4. It maintains that student appearance, as prescribed by the grooming policy, is a "unifying" force and "point of pride in the community." *Id.* at 3; 85 at 8. The District further asserts the grooming policy promotes student success by providing "consistency for all students throughout their time in [school]" and "instill[ing] discipline as it teaches students the value of following rules as they become young adults." Dkt. 85-1 at 4.

But the District does not explain how the policy's male-specific restrictions serve its interest in upholding community expectations. Does the District's community accept long hair for women but not men? What public

comment, feedback, or personal experiences led the Board to conclude the policy reflects their community's standards? *See* Dkt. 85-1 at 4. Who knows—the District does not say.

Nor does the District specify how the gender classification helps to promote student success. Students may very well "learn respect for authority that will benefit them inside, and outside, of the school walls" by following the grooming policy. Dkt. 85 at 15. But that neither explains nor justifies imposing different hair-length restrictions on male and female students.

The District fares somewhat better in showing the policy's gender distinction is substantially related to achieving career readiness. Dkt. 85 at 16–18. The District claims the hair-length restriction helps "prepare male students specifically for success in the workplace" by teaching "grooming standards and rules they very well may encounter in a [post-graduate] professional setting." *Id.* at 9; Dkt. 85-1 at 4. The District points to the "largest employers of District students in the area" being chemical plants, refineries, police and fire departments, and the U.S. military—all of which purportedly impose different hair-length restrictions on men and women. Dkt. 85-1 at 4.

The District offers evidence that the military imposes different hair-length restrictions on male and female personnel. Dkt. 85 at 16–17; *see, e.g.*,

Department of the Army, *Wear and Appearance of Army Uniforms and Insignia*, Army Reg. 6701-1, ch. 3-2 (2021)[4]; U.S. Marine Corps, *Marine Corps Uniform Regulations*, Marine Corps Order 1020.34H, ch. 1004-7(a)(1) (2018).[5] It does not, however, offer evidence of grooming policies that treat male and female employees differently in the community's police and fire departments, chemical plants, or refineries.[6] Nor does the District establish how many graduates go into these fields or enlist in the service.

Without evidence addressing the narrow issue before the court—what is the rationale for the grooming policy's distinction between male and female students?—simply stating an important interest exists fails to satisfy the Constitution. *See Craig*, 429 U.S. at 197. As the court previously stated,

---

[4] https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN30302-AR_670-1-000-WEB-1.pdf.

[5] https://www.marines.mil/portals/1/publications/MCO%201020.34H%20v2.pdf?ver=2018-06-26-094038-137.

[6] The District offers several Title VII cases upholding grooming policies with gender classifications in the workplace to show its own policy is substantially related to achieving career readiness for students. Dkt. 85 at 18–21. But those Title VII cases make clear their inapplicability in the Equal Protection context. *See, e.g.*, *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1088 (5th Cir. 1975) ("[W]e have no question here of whether . . . equal protection standards need be applied. Firstly, there is no state action present giving rise to a constitutional question, and secondly, no claim of deprivation of a constitutional right is advanced.") (citing, by comparison, Equal Protection cases challenging grooming regulations within public schools and higher education, *i.e.*, *Karr*, 460 F.2d at 616).

the District provides insight for its motivation to have a grooming policy but not its "rationale for the [policy's] distinction between male and female students"—the latter forming the basis of this claim. Dkt. 76 at 15. The court is reluctant to find preparing male students for the military's grooming preferences is, by itself, an "exceedingly persuasive justification" for gender discrimination, particularly in the absence of any data showing the likelihood of such students entering the service. *Virginia*, 518 U.S. at 524.[7]

This is certainly *not* a finding that the grooming policy necessarily violates the Constitution. At this stage, the court simply finds the District has not met its burden under Rule 56 to show the policy's gender classification survives intermediate scrutiny as a matter of law. The court encourages the parties to tailor the evidence and arguments to be presented at trial in light of this opinion.

*   *   *

---

[7] The District relies on an unpublished order from the Eastern District of Texas involving a constitutional challenge to a similar grooming policy. Dkt. 85 at 13 (citing *Woodley et al. v. Tatum Indep. Sch. Dist.*, C.A. No. 2:21-CV-00364-RWS, Dkt. 199 at 17–18 (E.D. Tex. Oct. 13, 2023)). But that court failed to expressly find Tatum ISD's policy restricting hair length for only male students was substantially related to achieving the district's stated interests. Dkt. 85-3 at 18–20.

Signed on Galveston Island this 3rd day of April, 2025.

                                              */s/ Jeffrey Brown*
                                              JEFFREY VINCENT BROWN
                                              UNITED STATES DISTRICT JUDGE