IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| DARRYL GEORGE, ET AL § | | |
| **Plaintiff** § | | |
| § | | |
| vs. § | 3:24 – CV - 00012 | |
| § | | |
| GREGG ABBOTT, ET AL § | | |
| **Defendant** § | **JURY TRIAL DEMANDED** | |

**PLAINTIFF, DARRYL GEORGE'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND MOTION FOR RECONSIDERATION**

TO THE HONORABLE JUDGE OF SAID COURT:

## I. INTRODUCTION

Plaintiff, Darryl George respectfully files this Response in Opposition to Defendant Barbers Hill Independent School District's ("BHISD or Defendant") Motion for Summary Judgment and Motion for Reconsideration. Defendant's motions must be denied because material fact disputes exist, Defendant's justifications for its grooming policy are unsupported by competent evidence, and reconsideration is unwarranted under applicable legal standards.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, courts must view all facts and draw all reasonable inferences in the light most favorable to the non-moving party as set forth in *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

A motion for reconsideration is granted only where there is a manifest error of law or fact, or newly discovered evidence under *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Disagreement and dissatisfaction with a court's ruling does not justify reconsideration.

## III. ARGUMENT

### A. EVIDENCE IN SURPPORT OF ARGUMENT

1. **Exhibit A – Deposition of Board Trustee Fred Skinner**

2. **Exhibit B – Deposition of Principal Rick Kana**

3. **Exhibit C – Deposition of Lance Murphy**

4. **Exhibit D- Deposition of Dr. Gregory Poole, Superintendent of Barbers' Hill Independent School District**

5. **Exhibit E – Deposition of Mandy Malone, Director of Strategic Planning and Community Engagement**

2

6. **Exhibit F – Defendant's Responses to Interrogatories, BHISD Bates No. 000302**

7. **Exhibit G – Defendant Response to Request for Production, BHISD Bates No. 000303**

8. **Exhibit H – Board Meeting Minutes and Parent Advisory Dress Code Committee Notes, BHISD001539-BHISD001544**

9. **Exhibit I – Training Powerpoints and Discipline Memos, BHISD Bates No. BHISD006155-BHISD012466**

10. **Exhibit J – Email Communications and Grooming Code Drafts, BHISD Bates No. BHISD001-BHISD06154**

11. **Miscellaneous Discovery Responses Provided by Defendant**

**B. BHISD's Motion for Summary Judgment Should be Denied Because A Genuine Issue of Material Fact Exists**

Defendant argues that its grooming policy is necessary to promote discipline, safety, and preparation for future careers. However, the evidentiary record thoroughly undermines this assertion. Multiple BHISD officials—including Dr. Greg Poole (Superintendent of Barbers Hill Independent School District), Board of Trustee Fred Skinner, and Principal Rick Kana—testified that the grooming policy was not implemented on the basis of any empirical studies, safety assessments, or expert recommendations **(Ex. A, Skinner Dep. 38:10–25, BHISD007235; Ex. B, Kana Dep. 41:3–**

**16, BHISD007316; Ex. D, Poole Dep. 29:1–15, BHISD007468)**.

Particularly, Board Trustee Fred Skinner acknowledged in his deposition he had "no data or proof" showing that boys' long hair disrupted education or affected discipline. Rick Kana, Principal in Barbers' Hill ISD testified that the policy was enforced based solely on tradition and community expectations—not necessity **(Ex. B, BHISD007316–BHISD007394)**. Dr. Poole, Superintendent of Barbers' Hill Independent School District went further, conceding that "neatness" and "discipline" are values derived from local customs, not proven educational benefits **(Ex. D, BHISD007468–BHISD007555)**.

Defendant's officials and corporate representative testimony along with discovery responses confirms that BHISD's policy was not narrowly tailored to serve an important governmental interest. Under *United States v. Virginia*, 518 U.S. 515 (1996), intermediate scrutiny requires that sex-based distinctions "serve important governmental objectives and must be substantially related to achievement of those objectives." Here, the testimony of every decisionmaker shows no data or rational basis for the policy—only aesthetic and cultural preferences.

Moreover, Defendant's responses to discovery offer no statistical correlation between hair length and any academic, behavioral, or safety outcomes **(Ex. F, BHISD001739–1744)**. The grooming code revisions adopted in response to litigation removed only explicit cultural language while preserving the same restrictions on hair

4

length, including the unconstitutional "when let down" clause that targets natural and traditionally styled hair **(Ex. J, BHISD001–06154)**.

These facts—unrebutted and corroborated by the court's Memorandum Order denying summary judgment **(Ex. K, at 6–11)**—warrant denial of BHISD's Motion under the controlling precedents of *Craig v. Boren*, 429 U.S. 190 (1976), and *Tuan Anh Nguyen v. INS*, 533 U.S. 53 (2001). BHISD has failed to demonstrate the policy is substantially related to any important governmental interest, let alone one that justifies differential treatment on the basis of sex.

### C. Defendant's Own Internal Documents Confirm Pretextual Justifications.

Documents produced by BHISD—including board minutes, district administrator training slides, and parent committee summaries—uniformly reflect that the policy's real basis lies in speculative opinions about what looks "neat" or "professional." In response to **Interrogatory No. 2 (Ex. F, BHISD Response to Interrogatories, at BHISD001739)**, BHISD acknowledged the original reasoning for the hair policy is unknown and that no specific disruption has been documented. They claim adherence to "community standards," yet the only support cited was a non-peer-reviewed summary by Dr. Bruton and anecdotal feedback from "select" parents.

Further, BHISD admitted in its interrogatory responses and deposition testimony, hereby included inside this response that it has never conducted a formal impact

assessment regarding academic performance or student behavior related to hair length **(see Ex. F, BHISD Response to Interrogatories, at BHISD001744)**. This undermines the BHISD's claim that the policy is necessary to further an important governmental interest. In addition to the testimonial evidence undermining BHISD's justifications, the BHISD's own records confirm the grooming policy was not based on measurable performance indicators, empirical data, or formalized analysis. Documents produced during discovery or lack thereof—including responses to interrogatories, internal presentations, and dress code revision documents—show that BHISD's justifications remain rooted in subjective values, tradition, and community aesthetics.

In response to Interrogatory No. 2, BHISD was unable to cite any documented incidents, disciplinary records, or academic impacts related to male students with longer hair **(Ex. F, BHISD001739)**. Instead, the District emphasized conformity with "community standards" and career preparation in undefined sectors (Id.).

BHISD's training materials further reveal the pretextual nature of the policy. In a presentation to staff regarding dress code enforcement, BHISD identified "professionalism," "respect for authority," and "career readiness" as justifications, but offered no linkage to academic performance or disruption in the classroom **(Ex. I, BHISD007526, BHISD007590–007599)**.

BHISD's Parent Advisory Dress Code Committee—which BHISD now relies on to support its grooming code—consisted of a select group of community members who

6

were not provided with data or expert guidance. Their minutes reflect anecdotal commentary, not measurable educational outcomes **(Ex. H, BHISD007593–007599)**. The Fifth Circuit and federal courts have routinely held that policies impacting students' appearance or bodily autonomy must be based on legitimate educational interests, not community preference. See *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 441 (5th Cir. 2001); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506–07 (1969).

The District's dress code changes in late 2023 included specific language targeting hairstyles "when let down," prohibiting even the temporary use of hair ties or bands to achieve compliance. This revision was implemented mid-year—although litigation had commenced regarding its unconstitutional policy—and appears to directly target George's attempt to remain in compliance via less restrictive or intrusive means as precedent states. **(Ex. J, BHISD001–06154)**.

The revisions, coupled with the absence of academic, disciplinary, or behavioral data to justify the policy's impact on male students, defeat BHISD's claim that its rule is narrowly tailored or justified by any legitimate governmental interest.

**D. Mid-Year Policy Changes Were Retaliatory, Overly Restrictive, and Constitutionally Overbroad.**

After previous litigation involving DeAndre Arnold and subsequent public controversy, BHISD adopted a December 2023 revision to its grooming policy that added

7

a restriction prohibiting male students from "gathering or wearing" hair in any style that, when let down, would fall below the shirt collar. This language creates an impermissible burden by requiring students to permanently alter their physical appearance to avoid suspension or expulsion.

BHISD's own materials confirm that tying up the hair or using rubber bands to comply is not allowed **(See Ex. J, PADC Meeting Notes at BHISD007593; Ex. I, Teacher Training Packet at BHISD007526)**. Teachers were instructed that hair manipulation to circumvent the rule is prohibited because it is "not permanent." Case law firmly supports the proposition that grooming policies requiring permanent physical alteration are overly burdensome and fail intermediate scrutiny. See *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 265 (5th Cir. 2010); *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 108-09 (3d Cir. 2013). A rule that allows no manipulation to comply, even temporarily, is not narrowly tailored.

Defendant argues that Plaintiff has not shown any evidence of discriminatory intent or selective enforcement under *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977). Defendant's argument fails for several reasons.

First, the Court has already found, in its Memorandum and Order **(Dkt. 38, at 9–11)**, that Plaintiff pleaded sufficient facts to proceed under the *Arlington Heights* framework. The Court denied Defendant's earlier motion to dismiss precisely because Plaintiff's allegations stated a plausible claim of gender-based disparate treatment in the

enforcement of BHISD's grooming code.

Second, the summary judgment record contains direct and circumstantial evidence of discriminatory enforcement and animus:

### i.  Disparate Enforcement Based on Gender

BHISD's grooming policy facially targets male students with hair length restrictions **(Ex. C, BHISD Student Code of Conduct at BHISD_000231–32)**, while exempting female students, allowing them to wear their hair below the eyebrows, earlobes, and collar. Despite the school's claim of neutrality, it is undisputed that only male students have been punished under this policy (as the rule only applies to males).

### ii.  Inconsistent Application and Escalating Discipline

After this litigation was underway, BHISD revised its grooming code to include the now-infamous "when let down" clause. This clause renders even compliant hairstyles—such as locs or braids tied up securely—subject to discipline if, when released from bands or ties, the hair would fall below the collar. This clause imposes an unreasonable and overly broad burden on students who wear culturally significant or naturally textured hairstyles.

Defendant's training materials confirm that male students are not allowed to manipulate their hair to comply with the rule. For example, the updated enforcement training states, "The refined wording will eliminate long hair being manipulated, by

9

anything, to circumvent length requirements." **(Ex. I, BHISD007526, BHISD007590–007599)**. This expressly prohibits even temporary styling solutions like ponytails or buns that comply with the collar-length rule.

Multiple BHISD administrators testified that the "when let down" clause has never been applied to female students, and that students were previously allowed to tie their hair up to remain in compliance. Dr. Poole and Mandy Malone both acknowledged that the change to prohibit hair that extends below the collar "when let down" was new and restrictive. **(Ex. D, Poole Dep. 67:1–19, BHISD007468; Ex. E, Malone Dep. 72:11–19, BHISD007556)**.

This clause forces a permanent alteration—a haircut—on students who would otherwise be in compliance with a reasonable dress code standard. The Supreme Court has acknowledged that compelled permanent physical changes trigger heightened scrutiny and implicate constitutional rights. See *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing bodily integrity as a protected liberty interest).

The Fifth Circuit has similarly emphasized that school regulations cannot impose unnecessary and excessive restrictions where less restrictive means are available. See *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 265 (5th Cir. 2010). Here, BHISD had an obvious, less restrictive alternative: allow students to tie up their hair if doing so maintained neatness and complied with collar length requirements.

Accordingly, the "when let down" clause is not narrowly tailored and is overbroad in its scope and application, rendering the policy unconstitutional under intermediate scrutiny.

**E. BHISD Officials Acknowledged the Lack of Evidence and the Role of Subjective Preference.**

Despite the school's claim of neutrality, it is undisputed that only male students have been punished under this policy. Defendant has never produced a single disciplinary record indicating that a female student was subject to discipline under the grooming code for hair length, regardless of whether her hair reached her collar, earlobes, or eyes. This one-sided enforcement reinforces the sex-based nature of the policy, further supporting Plaintiff's claim that the grooming code is not merely facially discriminatory but also applied in a discriminatory manner. See **Ex. F, BHISD001739; Ex. G, BHISD000303 (reflecting no evidence of grooming code enforcement against girls)**.

Discovery has revealed a stunning lack of consensus or conviction among BHISD's own personnel about the rationale and fairness of the grooming policy. Multiple administrators openly admitted under oath that they do not personally agree with or support the underlying reasoning of the hair length rule.

Principal Rick Kana testified: "I just enforce it. It's not for me to say whether it's

11

right or not," when asked whether he believed boys' hair length actually impacted discipline or academic performance **(Ex. B, Kana Dep. 48:1–12, BHISD007316)**. Dr. Greg Poole stated that, while he supports community norms, he could not identify any data or incident report that justified the restriction on hair length **(Ex. D, Poole Dep. 34:2–9, BHISD007468)**.

Mandy Malone, who serves as BHISD's Director of Strategic Planning and Community Engagement, and who was designated in part to ensure compliance with constitutional requirements, testified that the hair policy did not reflect any direct instructional need or empirical foundation. When asked whether BHISD had documentation showing long hair disrupted instruction, she replied, "No, I don't believe we do" **(Ex. E, Malone Dep. 56:18–23; 72:11–19, BHISD007556)**.

This is not a situation where school officials are acting on good faith educational experience or responding to disruptive conduct. Instead, their admissions support the conclusion that the policy exists merely because it has existed for decades—and it continues because no one has questioned it internally. The Fifth Circuit has warned against such institutional inertia when it conflicts with constitutional rights. See *Tinker*, 393 U.S. at 511 (noting that "undifferentiated fear or apprehension" of disruption is not enough to suppress student expression).

Furthermore, the lack of policy evaluation or oversight also violates sound educational policy-making standards. BHISD never commissioned a study, held a

12

statistically informed review, or evaluated outcomes associated with the grooming code, despite enforcing it with escalating disciplinary consequences. These admissions are not only significant—they are dispositive of BHISD's failure to justify the policy under intermediate scrutiny.

Mandy Malone, who previously served as an elementary principal and now holds the title of Constitutional Rights Compliance Officer, testified in her deposition that BHISD was advised by counsel to revise the policy to eliminate language that singled out specific hairstyles or cultural references. Despite this, she admitted: "I don't believe the current policy is based on educational need" and "it reflects what our community is used to seeing" **(Ex. E, Malone Dep. 56:18–23; 72:11–19, BHISD007556; Ex. D, Poole Dep. 34:2–9, BHISD007468; Ex. B, Kana Dep. 48:1–12, BHISD007316).**

These admissions, along with discovery responses that point to tradition and photographs as the basis for the rule **(see 302 ROGs, Interrogatory No. 1, BHISD001739)**, show the policy is not designed to meet a substantial educational need, but to uphold subjective visual preferences.

**F. Community Preferences Cited by BHISD Do Not Justify Constitutional Violations.**

BHISD heavily relies on the conclusions of its Parent Advisory Dress Code Committee to justify the hair-length rule, arguing that it is in line with community

expectations. However, that committee lacked any expert analysis, statistical basis, or professional educational review. Their own notes admit their conclusions were speculative and rooted in perception **(See Ex. J, BHISD007590–007598; Ex. I, BHISD007590–BHISD007598).**

As the Supreme Court held in *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969), public schools cannot abridge students' constitutional rights merely to conform to the preferences of the majority. Courts have consistently rejected grooming policies that impose blanket rules based solely on generalized standards of appearance. See *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 525 (S.D. Tex. 2020). BHISD asserts that its grooming code reflects the values of its community and relies on recommendations from the Parent Advisory Dress Code Committee (PADC). However, community preference cannot justify a sex-based distinction under intermediate scrutiny. The Supreme Court has made clear that public institutions may not enforce rules that infringe constitutional rights simply to conform to prevailing public opinion. See *United States v. Virginia*, 518 U.S. 515, 533 (1996) ("State actors may not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) ("In our system, state-operated schools may not be enclaves of totalitarianism.").

The record reveals that the PADC was not an expert body and did not consider statistical or empirical data in forming its conclusions. The committee's minutes show

that its members were not provided with evidence linking hair length to academic disruption, and that many of the policy's supporting arguments were met with strong counterarguments during the meetings. **(Ex. H, BHISD007593–007599)**.

The committee concluded that the grooming policy supported discipline and professional readiness, yet members acknowledged that perceptions of professionalism vary by industry and cultural norms, and that conformity was not an inherently educational value. These admissions were recorded and preserved as part of BHISD's training and advisory packet. **(Ex. I, BHISD007526; BHISD007590–007599)**.

Even assuming the committee's views accurately reflect a portion of the community, courts have long rejected the notion that majority preference can justify policies that classify based on sex. See *Craig v. Boren*, 429 U.S. 190, 198 (1976); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982). Thus, BHISD's attempt to anchor its policy in the "community values" argument fails to satisfy constitutional scrutiny.

BHISD's continued reliance on this committee—and not educational researchers or empirical studies—further emphasizes that the grooming policy is built on tradition, not academic or behavioral necessity. Accordingly, this argument provides no basis to uphold the policy under the Equal Protection Clause.

**G. Defendant's Motion for Reconsideration Is Procedurally and Substantively Improper.**

BHISD's Motion for Reconsideration is procedurally and substantively improper. Under Fifth Circuit precedent, a motion for reconsideration may be granted only to correct manifest errors of law or fact or to present newly discovered evidence. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). A motion that simply repeats arguments already considered and rejected by the Court is not proper grounds for reconsideration.

Here, BHISD rehashes its claim that the grooming policy is justified by community norms, discipline, and professional appearance—arguments this Court has already rejected in its April 3, 2025 **Memorandum and Order (Ex. K, at 6–11)**. The motion offers no newly discovered evidence, and it fails to identify any manifest error of law or fact.

Further, BHISD's Motion misrepresents both the record and the law. It continues to assert that the grooming policy supports educational goals without providing data or empirical support, despite the testimony of its own personnel who admitted no such foundation exists **(Ex. A–E, BHISD007235–007645)**. The policy's subjective basis is well-documented in the district's own documents **(Ex. F–J, BHISD000302–012466)**, and Judge Brown has already concluded that these rationales do not meet the standard of

intermediate scrutiny.

Accordingly, the motion for reconsideration is a textbook example of a party seeking a second bite at the apple. It should be denied in full.

**H. The Federal Court's Summary Judgment Order Confirms BHISD Has Not Met Intermediate Scrutiny.**

BHISD failed to provide a constitutionally sufficient justification for the sex-based grooming policy. The court found that BHISD's arguments regarding career readiness and community standards were not supported by any concrete data or targeted rationale. **(*See* Ex. K, Memorandum Opinion Denying MSJ, at 6–11, Dkt. 167)**.

As the court noted, while BHISD asserted that the policy prepares male students for workplaces like the military and chemical plants, it failed to present any evidence of how many students actually enter those fields or how its policy correlates with any professional standards outside the military. Id. at 9–11. BHISD's reliance on vague assertions of discipline, unity, and expectations is constitutionally insufficient. The court emphasized that merely asserting important interests is not enough; a school district must demonstrate that the sex-based restriction is "substantially related" to those interests. *Craig v. Boren*, 429 U.S. 190, 197 (1976); *United States v. Virginia*, 518 U.S. 515, 524 (1996).

Judge Brown's findings mirror the extensive evidence developed during discovery

and presented in Plaintiff's opposition, including deposition testimony, training materials, and grooming code revisions that confirm the absence of empirical or pedagogical basis for the policy's male-specific application. **(*See* Ex. A through J; BHISD Bates Nos. BHISD000001–BHISD017000+)**.

Accordingly, this Court should give considerable weight to the federal court's findings when assessing the current motions. BHISD has failed to carry its burden under intermediate scrutiny, and Plaintiff has provided evidence raising a genuine dispute of material fact as to whether the policy is narrowly tailored to serve a governmental interest.

## IV. CONCLUSION

For these reasons, BHISD's motions should be denied. Material factual disputes remain as to whether the grooming policy was designed to serve an important governmental interest and whether it was narrowly tailored to avoid infringing on constitutional rights. The record, including deposition testimony, internal documents, discovery responses, and policy revisions, reflects that the grooming code is based not on safety, discipline, or education but on subjective community preference and aesthetics. There is no competent evidence of disruption or harm posed by Darryl George's hair.

Moreover, the mid-year change barring students from wearing their hair "when let down" and disallowing rubber bands or hair ties creates an undue burden. Courts

have invalidated similar restrictions where less intrusive measures were possible. The District's own staff acknowledged that permanent alteration is not justified.

Accordingly, Defendant's Motion for Summary Judgment and Motion for Reconsideration must be denied.

## V. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Darryl George respectfully requests that this Honorable Court deny Defendant Barbers Hill Independent School District's Motion for Summary Judgment and Motion for Reconsideration in their entirety. Plaintiff further requests that this matter be set for trial on the merits so that a jury may resolve the genuine factual disputes identified herein. Plaintiff additionally requests all other and further relief to which he may show himself justly entitled at law or in equity.

Respectfully Submitted,

THE BOOKER LAW FIRM

*/s/ Allie Booker*
**ALLIE R BOOKER**
Federal Bar No. 1089873
1200 Rothwell Street
Houston, Texas 77002
(713) 292-2225 office
(713) 583-3999 facsimile
Counsel for Plaintiff

**LAW OFFICE OF JOSEPH K. PLUMBAR**

*/s/Joseph K. Plumbar*
**JOSEPH K. PLUMBAR**
Federal Bar No. 1493814
1200 Rothwell Street
Houston, Texas 77002
(713) 384-5507 (office)
(866) 252-3048(facsimile)

### NOTICE OF ELECTRONIC FILING

I, Allie R. Booker, Plaintiffs' Attorney, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above in accordance with the Electronic Case Files System of the Southern Texas, on this the 05/14/2025.

*/s/ Allie R. Booker*
Allie R. Booker

### CERTIFICATE OF SERVICE

I, Allie R. Booker, Plaintiffs' Attorney, do hereby certify that I have forwarded, a true and correct copy of the above, to all parties in this case, in accordance with The Federal Rules of Civil Procedure, on this the 05/14/2025.

*/s/ Allie R. Booker*
Allie R. Booker