**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **DARRYL GEORGE,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **C.A. No. 3:24-CV-00012** |
| | § | |
| **BARBERS HILL INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| | § | |
| *Defendant*. | § | |

<u>**BARBERS HILL INDEPENDENT SCHOOL DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL**</u>

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................ii

TABLE OF AUTHORITIES..........................................................................iv

SUMMARY OF THE ARGUMENT ............................................................. 1

ARGUMENT.................................................................................................. 1

    A.    George, once again, misunderstands the standard of review ....................... 1

    B.    George's flawed arguments are largely unresponsive to the District's motion................................................................................................. 1

        1.    Goerge attached the District's document production to his response ................................................................................ 1

        2.    George misstates the factual record ................................................... 2

        3.    George does not controvert a key legal argument advanced by the District .............................................................................. 4

        4.    George's arguments are untenable ..................................................... 5

            i.    George's legal arguments do not pass muster........................ 5

            ii.    George's factual and evidentiary arguments also miss the mark................................................................................. 8

                a.    Deposition of Fred Skinner ......................................... 8

                b.    Deposition of Greg Poole........................................... 10

                c.    Deposition of Rick Kana............................................ 12

                d.    Deposition of Mandy Malone .................................... 13

                e.    Interrogatory Responses............................................. 14

    CONCLUSION ...................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................................ 16

APPENDIX ................................................................................................ATTACHED

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.A. v. Needville Indep. Sch. Dist.*,
 611 F.3d 248 (5th Cir. 2010) ..................................................................... 6

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
 492 U.S. 469 (1989) ................................................................................... 5

*Bird v. Simpson Inves.*,
 121 F.3d 705 (5th Cir. 1997) ..................................................................... 4

*Boggess v. Chamness*,
 2025 WL 978992 (E.D. Tex. Apr. 1, 2025) ............................................ 15

*Broughton v. Livingston Indep. Sch. Dist.*,
 2010 WL 3056862 (E.D. Tex. July 29, 2010) .......................................... 2

*Craig v. Boren*,
 429 U.S. 190 (1976) ............................................................................ 6, 7, 9

*Cruzan v. Director, Miss. Dep't of Health*,
 497 U.S. 261 (1990) ................................................................................ 6, 7

*Dobbs v. Jackson Whole Women's Health Org.*,
 597 U.S. 215 (2022) .............................................................................. 6, 10

*Fenceroy v. Morehouse Par. Sch. Bd.*,
 2006 WL 39255 (W.D. La. Jan. 6, 2006) ................................................. 7

*Ferrell v. Dallas Indep. Sch. Dist.*,
 392 F.2d 697 (5th Cir. 1968) ..................................................................... 7

*George v. Abbott*,
 2024 WL 3687103 (S.D. Tex. Aug. 6, 2024) ........................................ 4, 5

*Harness v. Watson*,
 47 F.4th 296 (5th Cir. 2022) .................................................................... 15

*Jenkins v. Methodist Hosps. of Dallas, Inc.*,
 478 F.3d 255 (5th Cir. 2007) ..................................................................... 4

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
 710 F.3d 99 (3d Cir. 2013) .................................................................... 6, 7

*Littlefield v. Forney Indep. Sch. Dist.*,
 268 F.3d 275 (5th Cir. 2001) ..................................................................... 9

*Mississippi Univ. for Women v. Hogan*,
 458 U.S. 718 (1982) ............................................................................... 6, 7

*Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.*,
 695 F.2d 839 (5th Cir. 1983) ..................................................................... 2

*Nixon v. Shrink Mo. Gov't PAC*,
 528 U.S. 377 (2000) .................................................................................. 5

*Pound v. Holladay*,
 322 F. Supp. 1000 (N.D. Miss. 1971), *aff'd*, 444 F.2d 234 (5th Cir. 1971) ............ 7

*Ragas v. Tenn. Gas Pipeline Co.*,
 136 F.3d 455 (5th Cir. 1998) ..................................................................... 2

*Rivera v. Houston Indep. Sch. Dist.*,
 349 F.3d 244 (5th Cir. 2003) ..................................................................... 4

*Satellite Broadcasting & Commc'ns Ass'n v. F.C.C.*,
 275 F.3d 337 (4th Cir. 2001) ..................................................................... 5

*Six Dimensions, Inc. v. Perficient, Inc.*,
 969 F.3d 219 (5th Cir. 2020) ..................................................................... 1

*Tinker v. Des Moines Independent Cmty. Sch. Dist.*,
 393 U.S. 503 (1969) ............................................................................... 6, 7

*United States v. del Carpio Frescas*,
 932 F.3d 324 (5th Cir. 2019) ..................................................................... 2

*Worrell v. GreatSchools, Inc.*,
 2007 WL 4223234 (S.D. Tex. Nov. 28, 2007) ...................................... 15

**STATE CASES**

*Hines v. Caston Sch. Corp.*,
    651 N.E.2d 330 (Ind. App. 1995) ............................................................................. 7

*Jones ex rel. Cooper v. W.T. Henning Elem. Sch. Principal*,
    721 So. 2d 530 (La. App. 3d Cir. 1998) ................................................................. 7

**FEDERAL RULES**

Fed. R. Civ. P. 11(b)(3) ........................................................................................... 4

S.D. Tex. Local R. 7.4 ............................................................................................. 5

**STATE STATUTES**

Tex. Educ. Code § 11.151(b) ........................................................................ 4, 13, 14

## SUMMARY OF THE ARGUMENT

George's response suffers from a host of defects. He tries to import the wrong standard of review. He advances legal arguments with no relevant supporting authority. And he clutters the record by attaching the entirety of the District's document production to the response, without any basis to do so. But these errors pale in comparison to the response's fatal flaw: its near-exclusive reliance on nonexistent evidence and supposedly incriminating quotes of District witnesses that aren't real.

George's tactics reveal he has no legitimate response to the District's motion. The District asks the Court to grant reconsideration, dismiss this case, and order any relief it deems appropriate under the circumstances.

## ARGUMENT

### A. George, once again, misunderstands the standard of review.

George believes "[a] motion for reconsideration is granted only where there is a manifest error of law or fact, or newly discovered evidence." Dkt. 174 at 2 (citation omitted), 16. As the District explained in its motion, and the Court explained to George's counsel at the hearing, that's incorrect for Rule 54(b) motions. *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) (citation omitted). The Court knows the correct standard, so the District will not belabor the point.

### B. George's flawed arguments are largely unresponsive to the District's motion.

*1. George attached the District's document production to his response.*

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her

claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted). Courts need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citation omitted).

George's response seemingly attaches *all* the District's document production, some 13,000 pages.[1] Dkts. 174–181. The exhibits are voluminous and challenging to navigate, and George sometimes cites thousands of pages to support a generic proposition. *E.g.*, Dkt. 174 at 7. And his citations to the evidence are largely inaccurate. Part B(2), *infra*.

"Judges are not like pigs," ferrets, or hunting dogs expected to scour the record for "truffles" or other noteworthy items. *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (citation omitted); *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.*, 695 F.2d 839, 846–47 (5th Cir. 1983) ("Judges are not ferrets!"); *Broughton v. Livingston Indep. Sch. Dist.*, 2010 WL 3056862, at *8 n.7 (E.D. Tex. July 29, 2010) (declining "to assume such porcine qualities") (citation omitted). As such, the District asks the Court to reject George's invitation to do his job for him and to disregard George's effort to burden the record with unnecessary material.

### 2. *George misstates the factual record.*

Before turning to George's arguments, the District overviews the response's factual shortfalls, including (1) the timeline, (2) witness testimony, and (3) the facts generally.

---

[1] The District was only able to access and download the contents of Dkts. 174–178. Dkts. 179–181 were filed as restricted, thus denying the District the ability to access or download them. Even after requesting courtesy copies of Dkts. 179–181 the morning after they were filed, George's counsel did not provide them. As such, the District is unaware of the contents of Dkts. 179–181 and the supposed exhibits contained within them. George's counsel did represent that Dkts. 179–181 contain the remainder of the District's 13,351-page production, but, again, the District is unable to verify this statement.

*The Timeline.* George claims the District modified its policy in the 2023–2024 school year to "target him." Dkt. 174 at 5, 7 (complaining the "revision was implemented mid-year – although litigation had commenced regarding its unconstitutional policy – and appears to directly target George[] . . . .") (citing Bates Nos. 1–6154), 9 (same).

These statements are categorically false. The "when let down" language George refers to was added to the dress code provision regarding hair-length restrictions for male students (the Restriction) during the 2019–2020 school year. Dkt. 175-5 at 15:20–16:12; *accord* Dkt. 176-3 at 480. That was around four years *before* George's enrollment in the District for the 2023–2024 school year. Dkt. 176-5 at 409 (new student form); *accord* Dkt. 85-1 at 12. And the District re-adopted an identical policy every year since the 2019–2020 school year. Dkt. 85-1 at 5, 8–10.

*Support for the Restriction.* George also claims the District's employees disapprove of the Restriction. Dkt. 174 at 11. He says "[m]ultiple administrators openly admitted under oath that they do not personally agree with or support the underlying reasoning of the hair length rule." Dkt. 174 at 11. And he quoted witnesses purportedly repudiating the Restriction. *E.g.*, Dkt. 174 at 13 (claiming one witness admitted in her deposition, "I don't believe the current policy is based on educational need") (citation omitted).

Wrong again. To be clear, almost every quote George attributes to District personnel is inaccurate. And, in contrast to George's assertions, every testifying District employee supported the Restriction. *E.g.,* Dkts. 175-4 at 34:21–35:16 (Dr. Greg Poole explaining the Restriction is a part of the District's "winning recipe" for student success), 174-2 at 31:19–32:5 (Mr. Rick Kana stating he "believe[s] that [the Restriction] sets [students] up for

3

success in the future"), 175-5 at 24:1–3 (Ms. Mandy Malone explaining the Restriction sets boundaries that help students).

But even if they didn't, it wouldn't matter. The District's Board – not its employees – decides Board Policy. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 & n.2 (5th Cir. 2003) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'") (quoting Tex. Educ. Code § 11.151(b)). So, George's evidence is fictitious *and* immaterial.

*George's Facts.* Even more egregious, the misstatements above are *representative examples*, not outliers. Similar flaws permeate the response. Almost every citation in the response's body is incorrect. *See* Dkt. 174. The same is true for the attached "rubrics." *See* Dkts. 174a–174e. Though the District discusses the material errors below, an appendix assessing each inaccurate citation is attached for the Court's convenience. Appendix A.

While George may want to cast the evidence in a more favorable light, the Court shouldn't tolerate this conduct. *Bird v. Simpson Invcs.*, 121 F.3d 705, n.10 (5th Cir. 1997) ("inaccurate and misleading citations to the summary judgment record . . . will not be tolerated . . . ."); *see also Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 263–66 (5th Cir. 2007) (misquoting witness justified penalties) (citing Fed. R. Civ. P. 11(b)(3)). And a chimerical citation can't create a genuine question of material fact.

### 3. *George does not controvert a key legal argument advanced by the District.*

When a party "do[es] not provide any response" to an argument, the Court construes it "as a representation of no opposition." *George v. Abbott*, 2024 WL 3687103, at *8 (S.D.

4

Tex. Aug. 6, 2024) (citing S.D. Tex. Local R. 7.4). George's response ignores, and thus does not oppose, portions of the District's motion for reconsideration.

George ignored the second section of the District's motion, where the District articulated how courts apply the second prong of intermediate scrutiny. Dkt. 169 at 15. The second prong requires a "fit" between the government's means and ends. Dkt. 169 at 15 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). The "fit" need not be perfect, and the inquiry considers whether the government's goals are plausible. Dkt. 169 at 15–16 (collecting cases); *Satellite Broadcasting & Commc'ns Ass'n v. F.C.C.*, 275 F.3d 337, 360 (4th Cir. 2001) (upholding statute "[b]ecause the justifications . . . were both familiar and plausible") (citing *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 391 (2000)). Then, considering the second prong's flexibility, the District analyzed cases supporting summary judgment, including *Canady* and *Littlefield*. Dkt. 169 at 18–20.

George offers no response to the District's analysis. That's fatal to George's claim. After reconsideration, the Court should dismiss this case or grant the alternative relief requested by the District. *See* Dkt. 169.

### 4. *George's arguments are untenable.*

George's response mainly challenges, in scattershot fashion, the additional evidence supporting the goals furthered by the Restriction. Dkt. 174. The District addresses the legal arguments first and the factual contentions second.

### i. <u>George's legal arguments do not pass muster.</u>

George seems to raise three legal contentions in his response, tailored to address one of the justifications raised by the District: the community standards goal. George claims:

(1) Caselaw "firmly supports the proposition that grooming policies requiring permanent physical alteration are overly burdensome and fail intermediate scrutiny." Dkt. 174 at 8 (citing *A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 265 (5th Cir. 2010) and *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 108–09 (3d Cir. 2013)), 10 (citing *Cruzan v. Director, Miss. Dep't of Health*, 597 U.S. 261, 278 (1990)).

(2) "The Fifth Circuit has warned against . . . institutional inertia when it conflicts with constitutional rights." Dkt. 174 at 12 (citing *Tinker v. Des Moines Independent Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969)).

(3) "[P]ublic schools cannot abridge students' constitutional rights merely to conform to the preferences of the majority." Dkt. 174 at 14 (citing *Tinker*, 393 U.S. at 503), 15 ("courts have long rejected the notion that majority preference can justify policies that classify based on sex") (citing *Craig v. Boren*, 429 U.S. 190, 198 (1976)) and *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982)).

These arguments aren't persuasive.

*First*, George doesn't identify cases stating policies fail intermediate scrutiny if they require "permanent physical alteration." For starters, the Restriction doesn't require that. *See* Dkt. 85-1 at 8–10. And George's cases are inapposite. *A.A.* is a strict scrutiny case construing a religious freedom law. 611 F.3d at 265. The school's dress and grooming code "deprive[d] [the student] of religious exercise during the school day," thus substantially burdening the student's free exercise rights under the statute. *Id.* at 265–66. This case isn't about religion or strict scrutiny, so the *A.A.* framework doesn't apply.

*Cruzan*[2] and *K.A.* are even less relevant. Neither involves grooming policies. *Cruzan* upheld Missouri's requirement for clear and convincing evidence before life-sustaining

---

[2] The reporter volume and page number George provided is to *Dobbs v. Jackson Whole Women's Health Org.*, 597 U.S. 215 (2022), not *Cruzan*. Dkt. 174 at 10. If George intended to cite *Dobbs*, it would be of no help. *Dobbs* concluded constitutional rights must have a "basis in the Constitution's text or in our Nation's history." 597 U.S. at 300. Hair-length rules have been upheld for decades, if not longer, so hair length – which isn't textually addressed in the Constitution – can't be a constitutional right. *See id.*

treatment could be withdrawn from an incompetent person. 497 U.S. 261, 262 (1990). *K.A.* addressed a First Amendment challenge to a school's ban on distributing church party invitations. 710 F.3d at 102–03. *Canady* and *Littlefield* – both Fifth Circuit decisions involving dress codes – are more analogous and instructive. *See* Dkt. 169 at 18–20.

*Second*, George's reliance on *Tinker* is likewise unavailing. The case contains no reference to "institutional inertia," and that characterization of the Restriction ignores how the District gauged community sentiment over time. Dkt. 169 at 21. And in *Tinker*, the Supreme Court carved "regulations of . . . hair" out of the decision, citing the Fifth Circuit's deference to school hair-cut rules favorably. 393 U.S. at 507 (citing *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697 (5th Cir. 1968)).

*Third*, George's citations to *Craig* and *Hogan* fare no better. Neither case involved community expectations. *Hogan*, 458 U.S. at 727 (justification for women-only nursing program was "educational affirmative action"); *Craig*, 429 U.S. at 201–02 (justification for prohibition on *selling* alcohol to young males, but not prohibiting *drinking* it, was "traffic safety"). And courts have recognized the importance of "conformation to community standards" before. *See Fenceroy v. Morehouse Par. Sch. Bd.*, 2006 WL 39255, at *4 (W.D. La. Jan. 6, 2006); *see also Ferrell*, 392 F.2d at 703; *Jones ex rel. Cooper v. W.T. Henning Elem. Sch. Principal*, 721 So. 2d 530, 532 (La. App. 3d Cir. 1998); *Hines v. Caston Sch. Corp.*, 651 N.E.2d 330, 335 (Ind. App. 1995); *Pound v. Holladay*, 322 F. Supp. 1000, 1005 (N.D. Miss. 1971), *aff'd*, 444 F.2d 234 (5th Cir. 1971).

The District's student success and career readiness goals are legally uncontroverted. George's legal arguments only attack community standards, and his reliance on inapposite caselaw dooms them.

ii.      George's factual and evidentiary arguments also miss the mark.

### a. Deposition of Fred Skinner.

Fred Skinner is a member of the District's Board of Trustees. Dkt. 175-1 at 12:4–10. George claims Trustee Skinner "testified that the grooming policy was not implemented on the basis of any empirical studies, safety assessments, or expert recommendations." Dkt. 174 at 3 (citing Dkt. 175-1 at 38:10–25 and Bates No. 7235). George also posits that Trustee Skinner "acknowledged in his deposition he had 'no data or proof' showing that boys' long hair disrupted education or affected discipline." Dkt. 174 at 4 (citing no authority). George's argument is fatally defective in at least four ways.

*First*, George's portrayal of Trustee Skinner's testimony is inaccurate. Initially, the District cannot locate the phrase "no data or proof" in Trustee Skinner's deposition, and George doesn't explain the origin of this quote. Dkt. 174 at 4. Contrary to George's assertions, Trustee Skinner explained how the Restriction furthers the District's goals:

- Community Expectations. The Restriction reflects past and current norms. The Board formed a committee to "poll the community and give us a feel for the community's expectation[s]." Dkt. 175-1 at 13:16–14:6. The community wants the Restriction. Dkt. 175-1 at 21:2–24, 27:2–9.

- Student Discipline and Success. Grooming rules and academic excellence go hand-in-hand. Dkt. 175-1 at 16:17–22, 21:19–24 ("our policy of behavior reinforcement has worked"), 24:9–25:8 ("There is a structured environment where students [do] not" cause classroom disruptions), 26:3–9. Indeed, the District is "leaps and bounds above other school districts" and "graduated 100 percent of [its] seniors." Dkt. 175-1 at 18:10–17. While there may not be

8

"any one thing" guaranteeing student success, the Restriction is an ingredient in the District's successful recipe. Dkt. 175-1 at 18:18–25. While he was not personally aware of disruptions caused by long hair, the District's students have not had long hair since the early 1900s, and Trustee Skinner is a board member – not a disciplinarian. Dkt. 175-1 at 24:1–4, 28:8–13, 38:13–16.

- Career Readiness. The Restriction prepares students for post-high school life. The Board is "just trying to prepare our students for the expected norms that they're going to see when they get out of school." Dkt. 175-1 at 17:11–25, 18:1–7 ("we want our kids to be prepared to . . . tackle the world"). "Learning to abide by a set of rules prepares students for the adversities that they will see on the job site, in education, and in the military." Dkt. 175-1 at 24:15–17 (cleaned up); *accord* Dkt. 175-1 at 18:10–17 ("our kids are ready for college, they're ready for the military, they're ready for jobs when they get out . . . .").

This testimony is in harmony with the arguments and rationale in the District's motion. And it confirms the Restriction is not "based on any assumptions about masculinity and femininity" or "traditional gender roles." Dkt. 175-1 at 28:20–29:13.

*Second*, the government does not need statistical evidence to withstand intermediate scrutiny. For example, in *Craig*, the Supreme Court rejected the government's reliance on statistical evidence. 429 U.S. at 200–02. By contrast, the school district in *Littlefield v. Forney Independent School District* justified its policy without statistical evidence and met intermediate scrutiny. 268 F.3d 275, 286 & n.16 (5th Cir. 2001) (policy included findings and the school district compared its policy to other policies). Here, the District has an even stronger argument than the school in *Littlefield* did. It has made findings, polled community sentiment, and compared its policy to comparator institutions across the state. Dkt. 169 at 21 (collecting sources).

*Third*, although George says otherwise, the District *did* conduct studies, including the Bruton study and a community survey. *E.g.*, Dkt. 169 at 22 (citing Bruton's report,

board speech, and the PADC report). While Trustee Skinner answered "no" when asked if he was aware of "studies" that "compare[ed] the impact of grooming policies on male versus female students," George's response isolates one section from the testimony and ignores later clarification. Dkt. 175-1 at 13:16–14:6 (discussing PADC findings), 22:4–13 (acknowledging study "that students, on average, performed better when there was an established dress code and students were expected to maintain it"). These studies – though not necessary – confirm the connection between the Restriction and the District's goals.

*Fourth*, one trustee does not speak for the Board as a whole. *Dobbs*, 597 U.S. at 253 (indicating individual legislators can't speak for the body); Dkt. 175-1 at 28:3 ("I can't answer for the Board."). As such, even if Trustee Skinner had said something inconsistent with the District's motion (which he didn't), it wouldn't matter.

Trustee Skinner's testimony confirms the Restriction satisfies intermediate scrutiny.

### b. Deposition of Greg Poole.

Dr. Greg Poole has been the District's Superintendent for around two decades. Dkts. 85-1 at 3, 175-4 at 16:24–25. Throughout the response, George misquotes Dr. Poole's testimony. For the Court's convenience, the District identifies (1) what George represents Poole said and (2) what the cited authority *actually* says:

| Claim About Testimony | Actual Content of Citation |
|---|---|
| Dr. Poole "testified that the grooming policy was not implemented on the basis of any empirical studies, safety assessments, or expert recommendations." Dkt. 174 at 3 (citing **(1)** Dkt. 175-4 at 29:1–15 and **(2)** Bates No. 7468). | *Proposition unsupported.* **(1)** Dr. Poole discussed the District's religion- and health-related exemptions to the Restriction. |

10

| | (**2**) George cited a PowerPoint presentation related to the dress code from the 2018–2019 school year. |
|---|---|
| Dr. Poole "conced[ed] that 'neatness' and 'discipline' are values derived from local customs, not proven educational benefits." <br><br> Dkt. 174 at 4 (citing Bates Nos. 7468–7555). | *Proposition unsupported.* <br><br> George cites a series of PowerPoint presentations related to the dress code from the 2018–2019 school year to the 2022–2023 school year. |
| Dr. Poole "acknowledged that the change to prohibit hair that extends below the collar 'when let down' was new and restrictive." <br><br> Dkt. 174 at 10 (citing (**1**) Dkt. 175-4 at 67:1–19 and (**2**) Bates No. 7468). | *Proposition unsupported.* <br><br> (**1**) The deposition citation does not exist, as the transcript is only 46 pages. <br><br> (**2**) George cited a PowerPoint presentation related to the dress code from the 2018–2019 school year. |
| Dr. Poole admitted that no "data or incident report" justified the Restriction. Dkt. 174 at 12 (citing Dkt. 175-4 at 34:2–9 and Bates No. 7468). | *Proposition unsupported.* <br><br> (**1**) Dr. Poole discussed the statistical evidence the District considered. <br><br> (**2**) George cited a PowerPoint presentation related to the dress code from the 2018–2019 school year. |

The real testimony bears little resemblance to George's rendition. As the District's Superintendent, Dr. Poole "aid[s], guide[s], or help[s] provide information" to the Board. Dkt. 175-4 at 15:1–10. His role focuses more on "overseeing the process and implementing" Board policy. Dkt. 175-4 at 43:9–23. What is more, George ignores Dr. Poole's testimony that identifies how the Restriction accomplishes the District's goals:

- Community Expectations. The Restriction reflects past and current norms. School boards, as elected officials, are expected to set policy consistent with community expectations. Dkt. 175-4 at 43:11–17. People flock to the District because they share the District's values. Dkt. 175-4 at 35:9–12.

- Student Discipline and Success. The Restriction furthers student success. Students often need guidance. Dkt. 175-4 at 44:3–7. In carrying out its educational mandate, the District sets "high expectations" for its students, such as the Restriction. Dkt. 175-4 at 34:21–35:16. And those high

expectations pay off; the District has "some of the highest scores in the state," has received straight As on the TEA's accountability system, has "won UIL district 28 years in a row," and "just had two national merit scholars." Dkt. 175-4 at 34:21–35:16. As Dr. Poole explained, "[w]hen you have a winning recipe, you don't meddle with the ingredients." Dkt. 175-4 at 35:15–16; *see also* Dkt. 175-4 at 37:2–15.

- Career Readiness. The District is "told continuously by employers that they recognize" District students at the outset. Dkt. 175-4 at 35:3–8. That's because District students are "courteous, respectful, . . . discipline[d], [and have] very good work ethic." Dkt. 175-4 at 36:4–11. The Restriction is one part of that formula and helps improve career prospects for District graduates. Dkt. 175-4 at 36:4–11.

The District has already addressed George's remaining arguments about Dr. Poole's testimony. Part B(4)(ii)(b), *supra*. Dr. Poole's testimony is cumulative of the evidence already submitted by the District, but it supports the District's position.

### c. Deposition of Rick Kana.

Rick Kana is the District's Executive Director of Operations. Dkt. 175-2 at 13:24–25. George misrepresents his testimony as well, so the District applies the same framework from the preceding section:

| Claim About Testimony | Actual Content of Citation |
|---|---|
| Mr. Kana "testified that the grooming policy was not implemented on the basis of any empirical studies, safety assessments, or expert recommendations." Dkt. 174 at 3–4 (citing **(1)** Dkt. 175-2 at 41:3–16 and **(2)** Bates No. 7316). | *Proposition unsupported.*<br>**(1)** Mr. Kana and Ms. Booker discussed what Mr. Kana thinks a hairstyle is.<br>**(2)** George cites the "out-of-school suspension" page from the 2017–2018 Student Code of Conduct. |
| Mr. Kana "testified that the policy was based solely on tradition and community expectations – not necessity." Dkt. 174 at 4 (citing Bates Nos. 7316–394) | *Proposition unsupported.*<br>George cites a series of pages from the 2017–2018 and 2018–2019 Student Codes of Conduct. |

| | |
|---|---|
| Mr. Kana disavowed the policy when he testified that he "just enforce[s] it." Dkt. 174 at 11–12 (citing **(1)** Dkt. 175-2 at 48:1–12 and **(2)** Bates No. 7316). | *Proposition unsupported.* **(1)** Mr. Kana discussed the 2019 revision to the Restriction. **(2)** George cites the "out-of-school suspension" page from the 2017–2018 Student Code of Conduct. |

While Mr. Kana *was* the principal of Barbers Hill High School, he is now the Executive Director of Operations and has been since August 2022. Dkt. 175-2 at 13:8–25. That means that George enrolled *after* Mr. Kana changed positions and, as such, Mr. Kana never enforced the Restriction (against any student) during George's time at the District. *See* Dkts. 85-1 at 4, 12, 176-5 at 409. What is more, Mr. Kana had no decision-making authority on the adoption or revisions to the Restriction, even during his time as a principal. Dkt. 175-4 at 32:16–17, 54:19–24. This makes sense, as he is not on the Board, which is the body with exclusive authority to set District policy. Tex. Educ. Code § 11.151(b).

### d. Deposition of Mandy Malone.

Mandy Malone is the District's Executive Director of Student Services – not the "Constitutional Rights Compliance Officer," as George claims. Dkt. 175-5 at 15:20–22; Dkt. 174 at 13. George fabricates quotes for her too, so the District applies the same framework as it did for the preceding witnesses:

| Claim About Testimony | Actual Content of Citation |
|---|---|
| Ms. Malone "acknowledged that the change to prohibit hair that extends below the collar 'when let down' was new and restrictive." Dkt. 174 at 10 (citing **(1)** Dkt. 175-5 at 72:11–19 and **(2)** Bates No. 7556). | *Proposition unsupported.* **(1)** The deposition citation does not exist, as the transcript is only 39 pages. **(2)** George cited a page entitled "Common Inquiries . . . Frays/Unfinished Hems" |

| | from a PowerPoint presentation from the 2022–2023 school year. |
|---|---|
| Ms. Malone "testified that the hair policy did not reflect any direct instructional need or empirical foundation." Dkt. 174 at 12 (citing (**1**) Dkt. 175-5 at 56:18–23, (**2**) 72:11–19, and (**3**) Bates No. 7556). | *Proposition unsupported.* (**1**) The deposition citation does not exist, as the transcript is only 39 pages. (**2**) The deposition citation does not exist, as the transcript is only 39 pages. (**3**) George cited a page entitled "Common Inquiries . . . Frays/Unfinished Hems" from a PowerPoint presentation from the 2022–2023 school year. |
| Ms. Malone admitted in her deposition, "I don't believe the current policy is based on educational need" and "it reflects what our community is used to seeing." Dkt. 174 at 13 (citing (**1**) Dkt. 175-5 at 56:18–23, (**2**) 72:11–19, and (**3**) Bates No. 7316). | *Proposition unsupported.* (**1**) The deposition citation does not exist, as the transcript is only 39 pages. (**2**) The deposition citation does not exist, as the transcript is only 39 pages. (**3**) George cites the "out-of-school suspension" page from the 2017–2018 Student Code of Conduct. |

Even if Ms. Malone disagreed with the Restriction (which she doesn't), Ms. Malone's testimony isn't relevant to the legal analysis here. She ensures policy is "implemented with fidelity," but she's not a policymaker. Dkt. 175-5 at 17:17–18:4, 19:10–11, 26:20–24 (indicating she "support[s] principals and assistant principals"); Tex. Educ. Code § 11.151(b).

#### e.   Interrogatory Responses.

George claims the District (1) "acknowledged the original reasoning for the hair policy is unknown," Dkt. 174 at 5 (citing Bates No. 1739); (2) acknowledged "no specific disruption has been documented," Dkt. 174 at 5 (citing Bates No. 1739); and (3) "never conducted a formal impact assessment regarding academic performance or student

behavior related to hair length," Dkt. 174 at 5–6 (citing Bates No. 1744), in its interrogatory responses. To start, the cited portions of the District's document production relied on by George relate to Board meeting minutes from 2021. Appendix A. Setting that aside, only the first point is correct:

(1)    Yes, the District is unaware of the original justification for the policy – which dates back to the District's creation in the 1920s. Dkt. 161-1 at 5. But the current justifications for the policy are community expectations, student discipline and success, and career readiness. Dkt. 161-1 at 5. The past justifications for the policy, even if they were known, aren't relevant. *Harness v. Watson*, 47 F.4th 296, 309 (5th Cir. 2022) (en banc) (when a law is amended and ceases to exist in its original form, any "discriminatory intent behind its original enactment [is rendered] irrelevant").

(2)    The District explained how violations of the Restriction cause disruptions. "The Student Code of Conduct establishes that each student is expected to obey all campus and classroom rules." Dkt. 161-1 at 15. "When a student willfully continues to defy the dress code or is otherwise allowed to do so, . . . it can, and has, caused other students to cause classroom and campus disruptions regarding the apparent unfairness." Dkt. 161-1 at 15.

(3)    As already explained in the motion, the District discussed Dr. Bruton's study in its interrogatory responses. Dkt. 161-1 at 9; *see also* Dkt. 169 at 22.

Thus, contrary to George's assertions, the District's interrogatory responses support summary judgment as well.

## **CONCLUSION**

George provides no cogent basis to deny reconsideration. The District's main legal argument is unopposed, and fabricated evidence can't prevent dismissal. The District asks the Court to grant reconsideration, dismiss this case, and order any other appropriate relief.[3]

---

[3] The District has expended considerable resources investigating and responding to George's inaccurate and nonexistent citations. *See Boggess v. Chamness*, 2025 WL 978992, at *1 (E.D. Tex. Apr. 1, 2025); *see also Worrell v. GreatSchools, Inc.*, 2007 WL 4223234, at *3–5 (S.D. Tex. Nov. 28, 2007) (awarding attorney's fees due to false factual contentions).

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

_____
JONATHAN G. BRUSH
Attorney-in-Charge
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No.  3227731
ademmler@rmgllp.com
RICHARD A. MORRIS
State Bar No. 14497750
Fed. I.D. 15004
rmorris@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR BARBERS HILL ISD

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

_____
Attorney for Barbers Hill ISD

16