United States District Court
Southern District of Texas
**ENTERED**
June 16, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-12

DARRYL GEORGE, *ET AL.*, *PLAINTIFFS*,

v.

GREG ABBOTT, *ET AL.*, *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is Barbers Hill Independent School District's motion to reconsider the order denying its motion for summary judgment. Dkts. 85; 166; 167; 169 at 11–24. In the alternative, the district seeks permission to appeal. Dkt. 169 at 24–30. The court will grant the motions to reconsider and for summary judgment, Dkts. 85; 169 at 11–24, and deny as moot the request for interlocutory appeal, Dkt. 169 at 24–30.

I.  **Motion to reconsider**

The parties are familiar with the factual and procedural background. They know the summary-judgment legal standard. They disagree, however, on the standard of review for a motion to reconsider an interlocutory order.

Here it is: a district court may modify an interlocutory order "for *any reasonit deems sufficient*" at any time before final judgment. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (emphasis added) (citation omitted). To facilitate this process, parties may file motions for reconsideration under Fed. R. Civ. P. 54(b)—a "flexible" standard under which the court may consider new evidence and arguments raised by the movant. *Id.* at 336–37 (trial court may reconsider its decisions "even in the absence of new evidence or an intervening change in or clarification of the substantive law" (citation omitted)); *cf. Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (explaining standard for granting a motion under Rule 59, which applies only after final judgment has been entered).

The district provides additional summary-judgment evidence in its motion to reconsider. Dkt. 169 at 20–24. Finding this evidence material, the court grants the motion to reconsider its order denying summary judgment on George's sex-discrimination claim. *See, e.g.*, *Tierra Caliente Music Grp. v. Ser-Ca Discos, Inc.*, 2022 WL 20334777, at *2–3 (S.D. Tex. May 16, 2022) (construing "renewed" motion for summary judgment with additional evidence as motion to reconsider under Rule 54(b) and granting it).

## II. Motion for summary judgment

The court made clear that denying summary judgment was "certainly

*not* a finding that the grooming policy necessarily violates the Constitution;" rather, "the court simply [found] the [d]istrict ha[d] not met its burden under Rule 56 to show the policy's gender classification survives intermediate scrutiny as a matter of law." Dkt. 167 at 11. So, the court's inquiry here is simple: does the district's additional evidence[1] show, as a matter of law, that the grooming policy survives intermediate scrutiny? The answer is yes.

"To withstand constitutional challenge, classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197 (1976)

---

[1] A note on admissibility. The district court "is free to grant summary judgment on the basis of any facts shown by competent evidence in the record." *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994) (citation omitted). "Although the substance or content of the [summary-judgment] evidence . . . must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (cleaned up) (citation omitted); *see, e.g.*, *Innovention Toys, LLC v. MGA Ent., Inc.*, No. CV 07-6510, 2011 WL 13203112, at *3 (E.D. La. Mar. 17, 2011) (finding hearsay material admissible for summary-judgment purposes because the authors of the documentary evidence would testify at trial). Rule 56 permits the nonmovant to object that such evidence "cannot be presented in a form that would be admissible." Fed. R. Civ. P. 56(c)(2). George does not challenge the competency of the district's newly offered evidence—the board's meeting minutes, the Parental Advisory Dress Code Committee's recommendation to the board, deposition testimony, the Texas Education Agency's ("TEA") review of the district, and a study on the relationship between grooming policies and student success. Dkts. 169 at 20–24; 182 at 14–21. Although several contain hearsay, the court finds the district could present each exhibit in an admissible form for trial either through witness testimony based on personal knowledge or as business records.

(cleaned up). This "heightened scrutiny . . . attends all gender-based classifications," including hair-length restrictions. *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quotations and citation omitted); *see also Karr v. Schmidt*, 460 F.2d 609, 616, 617 n.26 (5th Cir. 1972) (stating courts should apply heightened scrutiny in "an action alleging discriminatory enforcement of a grooming code"); Dkt. 76 at 11–15.

The district's asserted governmental interests—(1) upholding community expectations, (2) promoting student success and discipline, and (3) preparing students for the work force—are "important" as a matter of law. Dkt. 85 at 7–9; *see, e.g.*, *Canady v. Bossier Par. Sch. Dist.*, 240 F.3d 437, 443 (5th Cir. 2001) (holding uniform policy's goals of increasing test scores and reducing disciplinary problems as "undoubtedly [] important interest[s]"); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391–92 (6th Cir. 2005) (same, along with increasing school unity); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435 (9th Cir. 2008) (holding uniform policy survived intermediate scrutiny because it served to increase student achievement, promote safety, and enhance a positive school environment).

The district has shown its grooming policy's gender classification is substantially related to its stated interests. *See Craig*, 429 U.S. at 197. To demonstrate a substantial relationship between the policy and community

expectations, the district offers: (1) sworn testimony of Dr. Greg Poole, the district's superintendent;[2] (2) board-meeting minutes where this topic was discussed and open for public comment; and (3) a recommendation by the Parent Advisory Dress Code Committee—formed by the district to determine whether the grooming policy's gender distinction remains consistent with community expectations—to maintain the policy because it accurately reflects community expectations and "[s]tudents appear more professional when groomed in accordance with the policy." Dkts. 85-1 ¶¶ 4–5, 7; 169 at 21; 169-1 at 2, 15. The court finds the district has met its burden.

To establish the link between the policy and student success and discipline, the district offers: (1) Dr. Poole's sworn testimony,[3] (2) the TEA's accountability overview rating the district an "A," to which the district credits the policy; (3) a study on the relationship between dress and grooming codes (including hair-length restrictions) and student success, where Dr. Christine Bruton examines grooming policies across 1,400 Texas high schools and

---

[2] Dr. Poole avers the district determines community expectations by hearing public comment at board meetings, taking feedback from the district's administration, and drawing on the trustees' experiences as community members. Dkt. 85-1 ¶¶ 4–5, 7. Student appearance, as prescribed by the grooming policy, is a "point of pride in the community." *Id.* ¶ 4.

[3] Dr. Poole testifies that district students "learn respect and structure" by following the grooming policy and that it provides "consistency for all students throughout their time in [school]" and "instill[s] discipline as it teaches students the value of following rules as they become young adults." Dkt. 85-1 ¶ 7.

finds connections between stricter grooming policies and higher TEA ratings, lower disciplinary infractions, and fewer dropouts;[4] and (4) the committee's reiteration of Dr. Bruton's findings in its recommendation to the board. Dkts. 85-1 ¶ 7; 169 at 22; 169-1 at 15–23. The district has met its burden on this interest, too.

Lastly, to show the policy is substantially related to career readiness, the district offers: (1) Dr. Poole's sworn testimony;[5] (2) the TEA's praise of the district for career preparation in its accountability overview, to which the district credits the policy; (3) the military's different grooming requirements for men and women;[6] and (4) the committee's recognition of similar

---

[4] Dr. Bruton found: (1) "[i]f you have a standard of dress like [the district], you are more likely to receive an A or B rating by the TEA; (2) "[y]ou are less likely to have significant safety-related issues"; and (3) "[o]ver a period of two years, 79% of high[-]school dropouts came from schools with no hair policy;" and (4) by contrast, "every failing school in Texas" does not have a hair-length policy like the district's. Dkt. 169-1 at 17–18.

[5] Dr. Poole testifies that the hair-length restriction helps "prepare male students specifically for success in the workplace" by teaching "grooming standards and rules [they] very well may encounter in a [post-graduate] professional setting," and states to the "largest employers of [d]istrict students in the area" are chemical plants, refineries, police and fire departments, and the U.S. military—all of which impose different hair-length restrictions on men and women. Dkts. 85 at 9; 85-1 ¶ 8.

[6] *See, e.g.*, Department of the Army, *Wear and Appearance of Army Uniforms and Insignia*, Army Reg. 6701-1, ch. 3-2 (2021), https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN30302-AR_670-1-000-WEB-1.pdf (last visited Apr. 3, 2025); U.S. Marine Corps, *Marine Corps*

grooming policies in the military and the workplace as a continuing basis for the policy. Dkts. 85-1 ¶ 7–8; 169 at 22–24; 169-1 at 2, 15. Indeed, Texas law requires public schools to prepare students for college, work, or the military. *See* Tex. Educ. Code §§ 28.008, 28.016. Male students must enroll in Selective Service at age 18, and 82.1 percent of active-duty service members are men. 50 U.S.C. § 3802(a); Dkt. 169 at 23 (citing Tara A. Osbourne, *Behind the Uniform: Service Members & Impaired Driving*, 64 NO. 1 JUDGES' J. 28, 28 (2025)). The policy prepares male students for a job they are statistically likelier to have and may be compelled to take. Moreover, it's legal for employers to differentiate based on sex in their dress codes. *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975) (en banc). Because the policy prepares its students for that reality, the court finds the district has met its burden as to career readiness.

    For the reasons above, the district has met its Rule 56 burden. And for the reasons below, George's argument that numerous issues of law and fact preclude summary judgment is unavailing. Dkt. 174. Where to begin? First, George challenges that the district's stated interests, particularly "community expectations," are "important." *Id.* at 4–7. The court has already

---

*Uniform Regulations*, Marine Corps Order 1020.34H, ch. 1004-7(a)(1) (2018), https://www.marines.mil/portals/1/publications/MCO%201020.34H%20 v2.pdf?ver=2018-06-26-094038-137 (last visited Apr. 3, 2025).

held they are. Moreover, George is wrong on the law. He consistently argues strict scrutiny's "narrowly tailored" requirement applies to his gender-discrimination claim, despite the court's clear rulings otherwise. Dkt. 174 at 4, 7, 8, 11, 18. Unsurprisingly, the cases he cites in support are inapposite. In *A.A. ex rel. Betenbaugh v. Needville Independent School District*, 611 F.3d 248 (5th Cir. 2010), the Fifth Circuit applied strict scrutiny to a free-exercise claim. *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), dealt with the necessary quantum of proof to withdraw life-sustaining treatment from an incompetent person. *K.A. ex rel. Ayers v. Pocono Mountain School District*, 710 F.3d 99 (3d. Cir. 2013), reviewed a free-speech challenge to a school's ban on Christmas party invitations. Interesting cases, but unhelpful to George. The only gender-discrimination cases George cites—*Craig* and *Hogan*—do not address whether community expectations are an "important" governmental interest. *See Craig*, 429 U.S. 190; *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982).

It gets worse on the facts. George has seemingly filed the entire discovery record as summary-judgment proof. Dkts. 175–81. That won't do. The nonmovant's burden is to point to *specific* evidence raising a genuine issue of fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify

specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."). The court refuses to "sift through" the thousands of pages George attaches to his response "in search of evidence to support" his position. *Id.* (citation omitted). Indeed, judges are neither "ferrets" nor "pigs, hunting for truffles buried in the record." *Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., Inc.*, 695 F.2d 839, 846–47 (5th Cir. 1983); *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (citation omitted).

The court appreciates, however, that the district has diligently scrutinized this voluminous record so the court need not. And what it found is alarming. In its reply brief, the district fact-checks each of George's citations by comparison to the summary-judgment record and caselaw. *See* Dkts. 182 at 8–20; 182-1 (providing side-by-side comparison of George's characterization of deposition testimony *cf.* the deposition transcript, along with a full appendix showing the court the actual content behind George's purported factual citations). Most of George's citations provide no support whatsoever for his contentions. Dkts. 182 at 8–20; 182-1 (demonstrating George's cited authorities either do not exist or fail to support the stated proposition). His quotations and summaries of witness testimony are inaccurate to the point of fabrication. *Id.* at 14–20.

George cannot raise a fact issue by making up facts. The court will not tolerate it. George's counsel of record is ordered to show cause for why their "inaccurate and misleading citations to the summary judgment record" have not violated Rule 11(b). *Bird v. Simpson Inv.*, 121 F.3d 705 n.10 (5th Cir. 1997) ("Counsel is *strongly* cautioned that [inaccurate citations to the record] cannot be condoned, and certainly will not be tolerated by the district court."); Fed. R. Civ. P. 11(c)(3); *see id.* 11(b)(3) (factual contentions must have evidentiary support); *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 263–66 (5th Cir. 2007) (misquoting witness justifies Rule 11 sanctions); *Worrell v. GreatSchools, Inc.*, 2007 WL 4223234, at *3–5 (S.D. Tex. Nov. 28, 2007) (awarding attorney's fees where opposing party made false factual contentions).

\* \* \*

For these reasons, the court withdraws its prior opinion and order, Dkts. 166, 167, grants the motion for summary judgment, Dkt. 85, denies as moot the motion to certify an interlocutory appeal, Dkt. 169 at 24–30, and orders George's counsel to show cause in writing by July 3, 2025, why their conduct in responding to the motion for summary judgment, Dkts. 174–81, has not violated Rule 11(b).

Signed on Galveston Island this 16th day of June, 2025.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE